Court of Appeals Case No. 21-56107

---

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

DRICKEY JACKSON,

*Plaintiff-Appellee,*

v.

AMAZON.COM, INC.,

*Defendant-Appellant.*

---

Appeal from the United States District Court
Southern District of California
District Court No. 3:20-cv-2365
The Honorable William Q. Hayes

---

**PLAINTIFF-APPELLEE'S ANSWERING BRIEF**

---

L. Timothy Fisher (SBN 191626)          Joshua D. Arisohn
Neal J. Deckant (SBN 322946)            Max S. Roberts
**BURSOR & FISHER, P.A.**               **BURSOR & FISHER, P.A.**
1990 North California Blvd., Suite 940  888 Seventh Avenue
Walnut Creek, CA 94596                  New York, NY 10019
Telephone: (925) 300-4455               Telephone: (646) 837-7150
E-Mail: ltfisher@bursor.com             E-Mail: jarisohn@bursor.com
        ndeckant@bursor.com                     mroberts@bursor.com

*Attorneys for Plaintiff-Appellee*

## CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellee has no corporate interests or affiliations to disclose.

Dated: June 29, 2022                   Respectfully submitted,

**BURSOR & FISHER, P.A.**

*/s/ Max S. Roberts*
Max S. Roberts

# <u>TABLE OF CONTENTS</u>

**PAGE(S)**

INTRODUCTION ................................................................................1

STATEMENT OF JURISDICTION.........................................................3

ISSUES PRESENTED AND STANDARD OF REVIEW ......................................4

STATEMENT OF THE CASE................................................................5

I.     JACKSON'S ALLEGATIONS......................................................5

II.    TIMELINE OF THE CASE ........................................................7

III.   THE DISTRICT COURT'S ORDER DENYING THE MOTION TO
       COMPEL ARBITRATION ........................................................7

ARGUMENT .................................................................................12

I.     THIS COURT LACKS JURISDCTION TO HEAR THIS APPEAL............12

      A.    This Court Lacks Appellate Jurisdiction Under 9 U.S.C. § 16
           Because Jackson Is Exempt From The FAA.......................12

      B.    There Is No Appellate Jurisdiction Under 28 U.S.C. § 1292(A)(1)
           Because A Denial Of A Motion To Compel Arbitration Is Not A
           Denial Of An Injunction.....................................................18

II.    THE DISTRICT COURT CORRECTLY HELD THAT JACKSON
       WAS NOT BOUND BY THE 2019 TOS ......................................24

      A.    Amazon Did Not Meet Its Burden To Demonstrate Jackson Was
           On Notice Of The 2019 TOS ..............................................24

      B.    Because Amazon Did Not Meet Its Initial Burden, Jackson Was
           Not Required To Submit His Own Evidence......................35

III.   THE DISTRICT COURT CORRECTLY HELD THAT JACKSON'S
       PRIVACY-BASED CLAIMS DO NOT ARISE OUT OF OR RELATE
       TO THE EMPLOYMENT-SPECIFIC ARBITRATION CLAUSE IN
       THE 2016 TOS ..................................................................38

      A.    The District Court Correctly Held That Jackson's Privacy-Based
           Claims Were Not Subject To Arbitration.............................39

      B.    Amazon's Arguments Are Unavailing.................................49

IV.   IF THIS COURT REVERSES THE DISTRICT COURT, THIS COURT
      SHOULD REMAND THE ACTION TO THE DISTRICT COURT TO
      DETERMINE THE UNCONSCIONABILITY OF THE ARBITRATION
      CLAUSE ......................................................................................................... 54

CONCLUSION ......................................................................................................... 55

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**CASES**

*Administrative Mgmt. Servs., Ltd. v. Royal Am. Managers, Inc.*,
   854 F.2d 1272 (11th Cir. 1988)..........................................................................19

*Amazon.com, Inc. v. Rittmann*,
   141 S. Ct. 1374 (2021) ...................................................................................12

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
   6 P.3d 669 (Cal. 2000) ...................................................................................54

*Arthur Andersen LLP v. Carlisle*,
   556 U.S. 624 (2009) ................................................................................ 14, 16

*Balan v. Tesla, Inc.*,
   840 F. App'x 303 (9th Cir. 2021) ...................................................................52

*Benson v. Double Down Interactive, LLC*,
   798 F. App'x 117 (9th Cir. 2020) ...................................................................30

*Briggs & Stratton Corp. v. Local 232, Int'l Union, Allied Industrial Workers of
   America (AFL-CIO)*,
   36 F.3d 712 (7th Cir. 1994)....................................................................... 20, 23

*Carbajal v. CWPSC, Inc.*,
   245 Cal. App. 4th 227 (Cal. Ct. App. 2016) ...................................................54

*Central States, Southeast and Southwest Areas Pension Fund v. Central Cartage
   Co.*,
   84 F.3d 988 (7th Cir. 1996)..............................................................................19

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001) .................................................................................. 3, 13

*Craft v. Campbell Soup Co.*,
   177 F.3d 1083 (9th Cir. 1998)................................................................. passim

*Cristo v. Charles Schwab Corp.*,
   2018 WL 1737544 (S.D. Cal. Apr. 11, 2018)..................................................43

iv

*Cruise v. Kroger Co.*,
  233 Cal. App. 4th 390 (2015)..............................................................40

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
  498 F.3d 1059 (9th Cir. 2007)............................................................23

*Discover Bank v. Superior Court*,
  113 P.3d 1100 (Cal. 2005) ..................................................................54

*Douglas v. United States Dist. Court for Cent. Dist. of California*,
  495 F.3d 1062 (9th Cir. 2007).............................................................30

*DSMC Inc. v. Convera Corp.*,
  349 F.3d 679 (D.C. Cir. 2003) ............................................................19

*Dufour v. Allen*,
  748 F. App'x 150 (9th Cir. 2019) ........................................................40

*EFund Cap. Partners v. Pless*,
  150 Cal. App. 4th 1311 (2007)............................................................40

*Elias v. Superior Court*,
  2015 WL 1455910 (Cal. Ct. App. 2015)...................................... 11, 47

*Engalla v. Permanente Med. Grp., Inc.*,
  938 P.2d 903 (Cal. 1997) .....................................................................40

*Engen v. Grocery Delivery E-Services USA Inc.*,
  453 F. Supp. 3d 1231 (D. Minn. 2020) ...............................................33

*Fred v. Washoe Tribe of Nevada and California*,
  525 F. App'x 616 (9th Cir. 2013) ..........................................................5

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*,
  815 F.2d 840 (2d Cir. 1987).................................................................52

*Gravillis v. Coldwell Banker Residential Brokerage Co.*,
  143 Cal. App. 4th 761 (2006)..............................................................40

*Hamrick v. Partsfleet, LLC*,
  1 F.4th 1337 (11th Cir. 2021)................................................. 14, 15, 17

*Hart v. Charter Commc'ns, Inc.*,
  814 F. App'x 211 (9th Cir. 2020) ........................................................31

*Hodges v. Comcast Cable Commc'ns, LLC*,
  12 F.4th 1108 (9th Cir. 2021).............................................................5

*Howard v. Goldbloom*,
  30 Cal. App. 5th 659 (2018)........................................................ passim

*In re Facebook Biometric Info. Priv. Litig.*,
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) ..................................... 32, 33

*Industrial Wire Prods., Inc. v. Costco Wholesale Corp.*,
  576 F.3d 516 (8th Cir. 2009)...............................................................19

*Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Aloha Airlines, Inc.*,
  776 F.2d 812 (9th Cir. 1985)....................................................... 19, 20

*Int'l Brotherhood of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*,
  702 F.3d 954 (7th Cir. 2012)...............................................................14

*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*,
  863 F.2d 315 (4th Cir. 1988)...............................................................52

*Jackson v. Amazon.com, Inc.*,
  559 F. Supp. 3d 1132 (S.D. Cal. 2021)..................................... passim

*Jolley v. Paine Webber Jackson & Curtis, Inc.*,
  864 F.2d 402 (5th Cir. 1989)...............................................................19

*Kanbar v. O'Melveny & Myers*,
  849 F. Supp. 2d 902 (N.D. Cal. 2011) ................................................49

*Kansas Gas & Elec. Co. v. Westinghouse Elec. Corp.*,
  861 F.2d 420 (4th Cir. 1988)...............................................................22

*KCOM, Inc. v. Employers Mutual Casualty Co.*,
  829 F.3d 1192 (10th Cir. 2016)...........................................................17

*Knutson v. Sirius XM Radio Inc.*,
  771 F.3d 559 (9th Cir. 2014)........................................... 8, 24, 36, 37

*Kum Tat Ltd. v. Linden Ox Pasture, LLC*,
 845 F.3d 979 (9th Cir. 2017) ........................................................ passim

*Larian v. Larian*,
 19 Cal. Rptr. 3d 916 (Cal. Ct. App. 2004) ............................. 24, 36, 37

*Long v. Provide Com., Inc.*,
 245 Cal. App. 4th 855 (2016) ............................................................34

*Marsch v. Williams*,
 23 Cal. App. 4th 250 (1994) ..............................................................47

*McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*,
 501 F. Supp. 3d 965 (D. Or. 2020) ....................................................33

*McLaughlin Gormley King Co. v. Terminix Int'l Co.*,
 105 F.3d 1192 (8th Cir. 1997) ...........................................................20

*Medtronic AVE, Inc. v. Advanced Cardiovascular Systems, Inc.*,
 247 F.3d 44 (3d Cir. 2001) .................................................................18

*Microchip Tech. Inc. v. U.S. Philips Corp.*,
 367 F.3d 1350 (Fed. Cir. 2004) .........................................................22

*Moses H. Cone Memorial Hosp. v. Mecury Constr. Corp.*,
 460 U.S. 1 (1983) ................................................................... 40, 42, 43

*Mostowfi v. I2 Telecom Int'l, Inc.*,
 2004 WL 7338797 (N.D. Cal. May 27, 2004) ...................................48

*Nguyen v. Barnes & Noble Inc.*,
 763 F.3d 1171 (9th Cir. 2014) ...........................................................34

*Oliveira v. New Prime, Inc.*,
 857 F.3d 7 (1st Cir. 2017) .......................................................... 14, 15

*Optimum Productions v. Home Box Office*,
 839 F. App'x 75 (9th Cir. 2020) ........................................................53

*Optimum Productions v. Home Box Office*,
 2019 WL 2331466 (C.D. Cal. May 23, 2019) ...................................53

*Oxy-Health, LLC v. H2 Enterprise, Inc.*,
  2019 WL 6729646 (C.D. Cal. July 31, 2019) .......................................... 2, 11, 42

*Oxy-Health, LLC v. H2 Enterprise, Inc.*,
  812 F. App'x 660 (9th Cir. 2020) ................................................. 42, 43, 44, 46

*Palcko v. Airborne Express, Inc.*,
  372 F.3d 588 (3d Cir. 2004) ........................................................ 15, 16

*Parino v. BidRack, Inc.*,
  838 F. Supp. 2d 900 (N.D. Cal. 2011) .............................................48

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967) ...................................................................40

*QED Holdings, LLC v. Block*,
  2015 WL 12659935 (C.D Cal. June 11, 2015) ...................................46

*Queipo v. Prudential Bache Securities, Inc.*,
  867 F.2d 721 (1st Cir. 1989) ........................................................ 18, 23

*Revitch v. DIRECTV, LLC*,
  977 F.3d 713 (9th Cir. 2020)........................................................48

*Rice v. Downs*,
  248 Cal. App. 4th 175 (2016)................................................. 9, 39, 44

*Rittmann v. Amazon.com, Inc.*,
  971 F.3d 904 (9th Cir. 2020)................................................. passim

*Sandquist v. Lebo Automotive, Inc.*,
  1 Cal. 5th 233 (2016)............................................................... passim

*Schnabel v. Trilegiant Corp.*,
  697 F.3d 110 (2d Cir. 2012)........................................................ 33, 37

*Sherwood v. Marquette Transp. Co.*,
  587 F.3d 841 (7th Cir. 2009)........................................................17

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999).......................................................51

*Southwest Airlines Co. v. Saxon*,
--- S. Ct. ---, 2022 WL 1914099 (U.S. June 6, 2022) .................................. 12, 14

*Spring Commc'ns Co.*,
428 F.3d 940 (10th Cir. 2005) ...........................................................................20

*Starke v. SquareTrade, Inc.*,
913 F.3d 279 (2d Cir. 2019) ........................................................... 10, 27, 28, 37

*Stover v. Experian Holdings, Inc.*,
978 F.3d 1082 (9th Cir. 2020) .................................................................. passim

*Tracer Research Corp. v. National Env't Servs. Co.*,
42 F.3d 1292 (9th Cir. 1994) .............................................................................46

*United States ex rel Dorsa v. Miraca Life Sciences, Inc.*,
33 F.4th 352 (6th Cir. 2022) .............................................................................37

*Wagner Constr. Co. v. Pac. Mech. Corp.*,
157 P.3d 1029 (Cal. 2007) ......................................................................... 40, 49

*Wang v. Bear Stearns & Co.*,
456 F. App'x 670 (9th Cir. 2011) .......................................................................5

*Webber v. Uber Tech., Inc.*,
2018 WL 10151934 (C.D. Cal. Sept. 5, 2018)............................................ 32, 37

*Wilson v. Huuuge, Inc.*,
944 F.3d 1212 (9th Cir. 2019).............................................................................30

*Wireless Warehouse, Inc. v. Boost Mobile, LLC*,
2010 WL 891329 (C.D. Cal. Mar. 10, 2010) ....................................................45

## STATUTES

9 U.S.C. § 1............................................................................................... passim

9 U.S.C. § 3................................................................................................18

9 U.S.C. § 4............................................................................................... 3, 18

9 U.S.C. § 16 ............................................................................................. passim

9 U.S.C. § 16(a)..........................................................................................17

9 U.S.C. § 16(a)(1) ................................................................ 13, 1

9 U.S.C. § 16(a)(1)(A) ................................................................4

9 U.S.C. § 16(a)(1)(B) ........................................................ 3, 4, 12

18 U.S.C. § 2511(1) ...................................................................46

18 U.S.C. § 2701(a) ...................................................................46

28 U.S.C. § 1292 .......................................................................19

28 U.S.C. § 1292(A)(1) .................................................... passim

28 U.S.C. § 1332(d) ....................................................................3

Cal. Civ. Code § 1589 ........................................................ 31, 1

Cal. Civ. Code § 1641 ........................................................ 44, 1

Cal. Civ. Code § 1648 ........................................................ 44, 1

Cal. Civ. Code § 1654 .................................................... 40, 1, 2

Cal. Penal Code § 631(a) ..........................................................46

## RULES

Fed. R. App. P. 29(a)(5) ............................................................57

Fed. R. App. P. 32(a)(6) ............................................................57

Fed. R. App. P. 32(f) .................................................................57

Fed. R. Civ. P. 15(a)(1)(B) .........................................................7

## OTHER AUTHORITIES

15B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3914.17 (2d ed. 2016) .............................................20

16 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3923 (3d ed. 2021) ...............................................21

x

## INTRODUCTION

Plaintiff-Appellee Drickey Jackson ("Jackson") privately communicated with other Amazon Flex Drivers outside of work, on private Facebook groups, on his private time. Defendant-Appellant Amazon.com, Inc. ("Amazon") surveilled these groups without consent or authorization, and Jackson brought privacy-based claims arising out of and relating to that surveillance. Amazon asked the District Court to send these claims to arbitration, arguing Jackson had agreed, under both the 2016 Terms of Services ("2016 TOS") and the 2019 Terms of Services ("2019 TOS"), to arbitrate all claims "arising out of or relating in any way to this agreement, including termination of this agreement, to [his] participation in the [Amazon Flex] program, or to [his] performance of services" as a Flex Driver. *See*, *e.g.*, Appellant's Excerpts of Record ("ER") 178, at § 11(a).

The District Court denied Amazon's motion, and this Court should affirm that decision. *First*, the District Court determined that Amazon failed to meet its burden of proof to demonstrate "[Jackson] assented to the 2019 TOS" because Amazon did not show it "provided [Jackson] individualized notice of the '[2019 TOS's] existence and contents.'" *Jackson v. Amazon.com, Inc.*, 559 F. Supp. 3d 1132, 1140–41 (S.D. Cal. 2021); *see also Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020). The District Court primarily focused on Amazon's failure to submit into evidence the design and content of the e-mail allegedly sent to Jackson, which the

District Court characterized as a "tactical decision." ER 12:19-21. Therefore, the District Court found that the 2016 TOS governed this dispute.

*Second*, applying California law,[1] the District Court found that Jackson's privacy-based claims, arising out of and related to Jackson's private communications in private Facebook groups, were not covered by the 2016 TOS's arbitration clause because the "alleged wrongs 'exist independently' of Plaintiff's employment relationship with Amazon." *Jackson*, 559 F. Supp. 3d at 1146; *Howard v. Goldbloom*, 30 Cal. App. 5th 659, 670 (2018); *Oxy-Health, LLC v. H2 Enterprise, Inc.*, 2019 WL 6729646, at *4 (C.D. Cal. July 31, 2019), *aff'd*, 812 F. App'x 660 (9th Cir. 2020). This ruling comports with the California Supreme Court's proclamation that "[w]here the drafter of a form contract has prepared an arbitration provision whose application to a particular dispute is uncertain, ordinary contract principles require that the provision be construed against the drafter's interpretation and in favor of the nondrafter's interpretation," which "applies with peculiar force in the case of a contract of adhesion." *Sandquist v. Lebo Automotive, Inc.*, 1 Cal. 5th 233, 247-48 (2016).

---

[1] California law applies to this dispute because Jackson is exempt from the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA") as a "worker[] engaged in foreign or interstate commerce." 9 U.S.C. § 1; *see also Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 916 (9th Cir. 2020) ("AmFlex delivery providers are thus transportation workers engaged in the movement of interstate commerce and exempt from the FAA's application.").

However, this Court need not reach the merits of the District Court's decision because it lacks jurisdiction to hear this appeal. 9 U.S.C. § 16(a)(1)(B) authorizes appeals from an order denying a motion to compel arbitration brought pursuant to 9 U.S.C. § 4. But because Jackson was exempt from the FAA at the time the action was brought, the appellate jurisdiction under 9 U.S.C. § 16 does not apply here. *See generally Craft v. Campbell Soup Co.*, 177 F.3d 1083 (9th Cir. 1998), *rev'd on other grounds, Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 982-83 (9th Cir. 2017). Likewise, 28 U.S.C. § 1292(a)(1) confers jurisdiction over "[i]nterlocutory orders … granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." But, as the majority of circuits have held, a denial of a motion to compel arbitration is not the same as the denial of injunctive relief. Therefore, this Court has no jurisdiction to hear this appeal.

For the following reasons, Amazon's appeal should be dismissed for lack or jurisdiction, or, alternatively, the District Court's decision should be affirmed.

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 putative class members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one putative class member is a citizen of a state different from at least

one defendant.

Amazon filed its notice of appeal on October 12, 2021. ER 226. Amazon seeks review of the District Court's September 15, 2021 Order Denying Defendant's Motion to Compel Arbitration. ER 39. Amazon contends that this Court has appellate jurisdiction pursuant to 9 U.S.C. §§ 16(a)(1)(A) and (B) and 28 U.S.C. § 1292(a)(1). Jackson disputes that this Court has appellate jurisdiction over Amazon's appeal.

## ISSUES PRESENTED AND STANDARD OF REVIEW

**Issue No. 1:** Whether this Court has jurisdiction to hear this appeal pursuant to either 9 U.S.C. § 16 or 28 U.S.C. § 1292(a)(1) where Jackson was exempt from the Federal Arbitration Act at the time Amazon brought its motion to compel arbitration and where the denial of a motion to compel arbitration is not the equivalent of the denial of an injunction.

**Issue No. 2:** Whether the District Court correctly held—under this Court's precedents, California law, and Amazon's own contract—that Amazon did not meet its burden of proof as to Jackson's notice of and mutual assent to the 2019 TOS where Amazon could not confirm the e-mail was received by Jackson, nor did Amazon provide the design and content of the e-mail allegedly sent to Jackson.

**Issue No. 3:** Whether, under the 2016 TOS, the District Court correctly held that claims arising from and relating to Jackson's private activity in private Facebook

4

groups accessed on Jackson's private time did not fall within the scope of his work-related arbitration clause.

**Standard of Review:** All questions of law are reviewed *de novo*. *Hodges v. Comcast Cable Commc'ns, LLC*, 12 F.4th 1108, 1113 (9th Cir. 2021). "[T]he construction and interpretation of a contract term relating to the … scope of an arbitration clause" are also reviewed *de novo*. *Wang v. Bear Stearns & Co.*, 456 F. App'x 670, 671 (9th Cir. 2011). This Court determines its "own jurisdiction *de novo*." *Fred v. Washoe Tribe of Nevada and California*, 525 F. App'x 616, 617 (9th Cir. 2013).

## STATEMENT OF THE CASE

### I. JACKSON'S ALLEGATIONS

Jackson is a driver for Amazon Flex, "a program by which Amazon pays regular people to deliver packages." ER 209, at ¶ 13. Outside of work, Jackson chose to communicate with other Amazon Flex Drivers in private Facebook groups, just as one might chat with co-workers over drinks or dinner. ER 208, at ¶ 4, ER 209, at ¶ 15, ER 213, at ¶¶ 25-27. In those groups, Jackson and other Flex Drivers discussed many personal and professional topics, including grievances about their working environment and the possibility of unionization. *Id*. However, the topics of these conversations, and even the fact that Jackson is an Amazon Flex Driver, are not relevant to the merits of Jackson's claims.

Notably, none of these communications took place at work, on an Amazon-sponsored platform or computer, or during an Amazon-sponsored event. *Id.* Instead, they were private communications made outside of work, on Jackson's private time. *Id.*; *see also* ER 209, at ¶ 16. And the Facebook groups were indisputably private. They were designated as "Private," which meant that they restricted, per Facebook's privacy settings, so that no one but group members could see the contents of the communications, and prospective group members were only let in if they were also Flex Drivers. ER 209, at ¶ 16.

Unbeknownst to Jackson and other group members, Amazon secretly monitored and wiretapped their private communications in these private Facebook groups. ER 209, at ¶ 17. Specifically, Amazon monitored and collected communications in at least forty-three private Facebook groups through Amazon's Advocacy Operations Social Listening Team. ER 210, at ¶¶ 18-19. This team compiled the contents of the posts in the private Facebook groups into reports and delivered them to Amazon's corporate department. ER 211, at ¶ 21. Amazon was then able to filter the reports for specific issues, such as complaints about warehouse conditions, unionization efforts, and dissatisfaction about pay. *Id.*; *see also* ER 212, at ¶ 22. Amazon "asked its employees to keep this monitoring program secret," knowing that because "most of the Post/Comment screenshots within the site are from closed Facebook groups," "[i]t [would] have a detrimental effect if it [fell]

within the reach of any of [Amazon's] Delivery partners." ER 212, at ¶ 23.

Based on Amazon's secret surveillance of the private communications in the private Facebook groups, Jackson brought several privacy-based claims on behalf of himself and a class of all those similarly situated against Amazon.

## II.    TIMELINE OF THE CASE

Jackson filed this case on December 4, 2020 and then amended as of right under Fed. R. Civ. P. 15(a)(1)(B) on February 19, 2021. ER 206, 227 (ECF No. 1). On May 16, 2021, Amazon filed its Motion to Compel Arbitration, Dismiss, or, in the Alternative, to Stay. ER 207. On August 3, 2021, the District Court heard oral argument on Amazon's Motion to Compel Arbitration. ER 9. On September 15, 2021, the District Court denied Amazon's Motion to Compel Arbitration. ER 62. On October 12, 2021, Amazon filed an Answer to Jackson's First Amended Complaint. ER 229 (ECF No. 29). That same day, Amazon filed its Notice of Appeal, as well a Motion to Stay pending the disposition of this Appeal. ER 229-230 (ECF No. 30-31). On November 30, 2021, the District Court granted Amazon's Motion to Stay. ER 4.

## III.    THE DISTRICT COURT'S ORDER DENYING THE MOTION TO COMPEL ARBITRATION

The District Court denied Amazon's motion to compel arbitration. *First*, Amazon had argued that the 2019 TOS governed this dispute, rather than the earlier 2016 TOS. But the District Court rejected Amazon's argument that Jackson had

assented to the terms of the 2019 TOS. The District Court noted that "[a]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose contractual nature is not obvious." *Jackson*, 559 F. Supp. 3d at 1139 (citing *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)). The District Court also noted that it was *Amazon's* burden, as "the party alleging the existence of a contract … to prove each and every element of a valid contract—including mutual assent." *Id.* (citing *Stover*, 978 F.3d at 1086). Further, Amazon's own contract stated it "may modify this Agreement … at any time by *providing notice to you* through the Amazon Flex app or otherwise *providing notice to you*." ER 179, at § 13 (emphasis added). Based on those principles, the Court could not "conclude from the allegations in the Complaint or the evidence presented by Amazon that … [it] provided [Jackson] individualized notice of the 'agreement's existence and contents' adequate to demonstrate that [Jackson] assented to the 2019 TOS." *Jackson*, 559 F. Supp. 3d at 1140-41. The Court focused in particular on the fact that Amazon had not submitted the design and content of the e-mail it had allegedly sent to Jackson into the record, which it called a "tactical decision" by Amazon. ER 12:19-21. Thus, the Court found that the 2016 TOS governed the dispute.

*Second*, under California law, the District Court found that "[t]he alleged wrongs do not arise out of or relate to the 2016 TOS, [Jackson's] participation in the

Flex program, or [Jackson's] performance of services." *Jackson*, 559 F. Supp. 3d at 1146. Specifically, the Court noted that "[t]he claims alleged in the FAC arise from Amazon's alleged intrusion into Plaintiff's private Facebook groups. The alleged wrongs 'exist independently' of Plaintiff's employment relationship with Amazon." *Id.* (citing *Howard*, 30 Cal. App. 5th at 670). This comported with the notion that "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate." *Id.* at 1144 (quoting *Rice v. Downs*, 248 Cal. App. 4th 175, 185 (2016)). And it comported with the California Supreme Court's proclamation that "[w]here the drafter of a form contract has prepared an arbitration provision whose application to a particular dispute is uncertain, ordinary contract principles require that the provision be construed against the drafter's interpretation and in favor of the nondrafter's interpretation," which "applies with peculiar force in the case of a contract of adhesion." *Sandquist*, 1 Cal. 5th at 247-48.

## SUMMARY OF THE ARGUMENT

*First*, this Court should dismiss the appeal for lack of jurisdiction. The District Court denied Amazon's motion under California law, *not* the FAA, because Jackson was exempt from the FAA at the time he brought his action. *Rittmann*, 971 F.3d at 916. Because Amazon's motion was not and could not have been brought under the FAA, the interlocutory appeal provisions of 9 U.S.C. § 16 do not apply. *Craft*, 177 F.3d at 1094; *Kum Tat*, 845 F.3d at 983. Likewise, as the majority of

9

circuits have found, the denial of a motion to compel arbitration is not the equivalent of the denial of injunctive relief so as to authorize an appeal under 28 U.S.C. § 1292(a)(1).

*Second*, provided this Court has jurisdiction to entertain this appeal (it does not), it should affirm the well-reasoned opinion of the District Court. The District Court correctly found that Amazon did not meet its burden to demonstrate that Jackson had notice of and assented to the 2019 TOS. "As the party alleging the existence of a contract, [Amazon] has the burden to prove *each and every element* of a valid contract—including mutual assent." *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020) (emphasis added). Amazon did not meet its burden here because it failed to demonstrate it provided individualized notice to Jackson. Namely, Amazon failed to supply a copy of the e-mail containing notice of the 2019 TOS, which the District Court characterized as a "tactical decision." ER 12:19-21. Without seeing the design and content of the e-mail, the District Court could not conclude that Amazon met its burden of proof as to mutual assent to the 2019 TOS. *See*, *e.g.*, *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 292 (2d Cir. 2019).

The District Court also correctly concluded that Jackson's privacy-based claims arising from and related to activities and communications that took place outside of work, on Jackson's private time, in private Facebook groups, were not subject to the employment-related arbitration clause in the 2016 TOS. Under

California law, "[w]here the drafter of a form contract has prepared an arbitration provision whose application to a particular dispute is uncertain, ordinary contract principles require that the provision be construed against the drafter's interpretation and in favor of the nondrafter's interpretation." *Sandquist*, 1 Cal. 5th at 247-48. This principle "applies with peculiar force in the case of a contract of adhesion," such as the 2016 TOS. *Id.* Applying these principles to Jackson's factual allegations, the District Court correctly found that "[t]he alleged wrongs do not arise out of or relate to the 2016 TOS, [Jackson's] participation in the Flex program, or [Jackson's] performance of services" because "[t]he claims alleged in the FAC arise from Amazon's alleged intrusion into [Jackson's] private Facebook groups" and thus "'exist independently' of [Jackson's] employment relationship with Amazon." *Jackson*, 559 F. Supp. 3d at 1146; *see also Howard*, 30 Cal. App. 5th at 670; *Oxy-Health*, 2019 WL 6729646, at *4. The fact that Jackson was an Amazon Flex Driver communicating with other Amazon Flex Drivers about work did not mean that the claims concerning private activities were subject to arbitration, and indeed, that could not have been the intention of either Jackson *or* Amazon. *Elias v. Superior Court*, 2015 WL 1455910, at *7 (Cal. Ct. App. 2015).

# ARGUMENT

## I.    THIS COURT LACKS JURISDCTION TO HEAR THIS APPEAL

### A.    This Court Lacks Appellate Jurisdiction Under 9 U.S.C. § 16 Because Jackson Is Exempt From The FAA

Under 9 U.S.C. § 16(a)(1)(B), "[a]n appeal may be taken from an order denying a petition *under section 4 of this title* to order arbitration to proceed." (Emphasis added).  Crucially, this provision requires the motion to compel arbitration be made pursuant to the FAA.  But, as this Court recently held, Amazon Flex Drivers like Jackson are exempt from the FAA under 9 U.S.C. § 1 because they are "workers engaged in foreign or interstate commerce." *Rittmann*, 971 F.3d at 916. *Rittman* became final when the Supreme Court denied Amazon's petition for a writ of certiorari, which occurred prior to Amazon's motion. *Amazon.com, Inc. v. Rittmann*, 141 S. Ct. 1374 (2021).  And *Rittman*'s reasoning was recently affirmed by the Supreme Court. *Southwest Airlines Co. v. Saxon*, --- S. Ct. ---, 2022 WL 1914099, at *8 (U.S. June 6, 2022) ("Latrice Saxon frequently loads and unloads cargo on and off airplanes that travel in interstate commerce.  She therefore belongs to a 'class of workers engaged in foreign or interstate commerce' to which § 1's exemption applies.")

Because Jackson is exempt from the FAA, and because Amazon's motion to compel arbitration was not and could not have been brought pursuant to the FAA, this Court lacks appellate jurisdiction under 9 U.S.C. §§ 16(a)(1)(B).  To that end,

*Craft* is instructive. In *Craft*, the lower court "held that arbitration of Craft's Title VII claims could not be compelled." *Craft*, 177 F.3d at 1084. Campbell Soup sought "interlocutory appeal from the district court's denial of its motion for summary judgment." *Id.* at 1083. But "[a]s there [wa]s no final judgment or any other applicable exception to the final judgment rule," this Court noted it had "jurisdiction *only if* the Federal Arbitration Act [] applie[d]." *Id.* (emphasis added). This Court went on to hold that Craft was exempt from the FAA under [9 U.S.C. § 1],[2] and because "the FAA [wa]s inapplicable to the CBA that governs Craft's employment … we have no jurisdiction over Campbell Soup's interlocutory appeal." *Id.* at 1094.

This Court reached a similar conclusion in *Kum Tat*. In *Kum Tat*, 845 F.3d at 982, Kum Tat made a motion to compel arbitration and stay litigation under only "California arbitration law and contained no citation to the FAA." This Court held that because "the order denying the motion was not an order from which § 16(a)(1) permits an interlocutory appeal," it lacked jurisdiction to hear the appeal. *Id.* at 982. This Court went on to hold that "Congress chose to authorize interlocutory review only of denials of arbitration motions brought under the FAA, and we cannot invoke

---

[2] The Supreme Court reversed *Craft* on the ground that "Section 1 exempts from the FAA only contracts of employment of transportation workers," not employment contracts generally. *Circuit City Stores, Inc.*, 532 U.S. at 119. By contrast, the Supreme Court did not address whether appellate jurisdiction would continue to attach if a class of workers were exempt from the FAA, and thus did not reverse on those grounds.

the policy of the FAA to expand the scope of appellate jurisdiction in § 16." *Id.* at 983 (internal quotations omitted).

This Court is not alone. The First, Seventh, and Eleventh Circuits have also held that once the appellate court finds the § 1 exemption applies, it lacks jurisdiction to hear the appeal of a denial of a motion to compel arbitration. *Oliveira v. New Prime, Inc.*, 857 F.3d 7, 24 (1st Cir. 2017), *aff'd sub nom*, *New Prime Inc. v. Oliveira*, 139 S. Ct. 532 (2019); *Int'l Brotherhood of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*, 702 F.3d 954, 957 (7th Cir. 2012) ("*Kienstra*"); *Hamrick v. Partsfleet, LLC*, 1 F.4th 1337, 1354 (11th Cir. 2021).

The Court should reach the same conclusion as *Craft*, *Kum Tat*, *Oliveira*, *Kienstra*, and *Hamrick*.[3] Under *Rittmann*, 971 F.3d at 916, and *Saxon*, 2022 WL 1914099, at *8, Jackson is exempt from the FAA as a "transportation worker[] engaged in the movement of interstate commerce." Because Jackson is exempt from the FAA, the FAA's provisions related to interlocutory appeals do not apply. *Craft*, 177 F.3d at 1094. Further, the motion to compel arbitration was denied under California law, not the FAA. *Jackson*, 559 F. Supp. 3d at 1143 ("The Court applies

---

[3] *Craft* does not conflict with later Supreme Court precedent, and *Oliveira*, *Kienstra*, and *Hamrick* were not wrongly decided, as Amazon is likely to contend. Per *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), each court analyzed whether the § 1 exemption applied, rather than refusing to exercise jurisdiction in the first place on the basis that the § 1 exemption might not apply. However, once *Craft*, *Oliveira*, *Kienstra*, and *Hamrick* independently held that § 1 applied, they correctly dismissed the appeal for lack of jurisdiction.

California state law to determine whether a valid agreement to arbitrate exists in this case."). Thus, because the FAA's provisions related to interlocutory appeals do not apply—and 9 U.S.C. § 16 is the "only conceivable basis for [] jurisdiction over this interlocutory appeal" (*Oliveira*, 857 F.3d at 24)—this Court lacks jurisdiction to hear Amazon's appeal.

In its reply, Amazon will likely make several counterarguments. *First*, Amazon will likely cite to the minority view from *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 591-92 (3d Cir. 2004), which held that "the FAA's provision for interlocutory appeals of orders denying motions to compel arbitration clearly endows us with appellate jurisdiction even in instances when the validity of the underlying contract to arbitrate *is in doubt*." (Emphasis added). The Eleventh Circuit rejected *Palcko*, finding the Eleventh Circuit—like this Court, as well as the First and Seventh Circuits—"applies a different, and (apparently) narrower, test for pendent appellate jurisdiction," and that "the nonappealable issue of whether state arbitration laws applied to the drivers' independent contractor agreements was not necessary to resolve the appealable issue of whether the federal transportation worker exemption applied to the drivers." *Hamrick*, 1 F.4th at 1353.

In any event, the *Palcko* court was tasked with considering in the first instance whether the 9 U.S.C. § 1 exemption applied. Notwithstanding that it should have dismissed the appeal once it found the exemption applied, the *Palcko* court had

jurisdiction to address this question because the validity of the contract was "in doubt." *Palcko*, 372 F.3d at 592. In other words, the Third Circuit held that where there was doubt as to whether the FAA applied, it had jurisdiction to address that question. Here, however, there is no doubt. Prior to the initiation of this action, this Court conclusively held in *Rittmann*, 971 F.3d at 916—as reaffirmed by *Saxon*—that Jackson is exempt from the FAA under 9 U.S.C. § 1. Thus, unlike *Palcko*, there is no threshold question of FAA applicability to consider.

*Second*, Amazon will likely argue that *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 628 (2009) stands for the proposition that dismissing the appeal here would improperly "conflat[e] the jurisdictional question with the merits of the appeal." This is not true. In *Carlisle*, 556 U.S. at 628-629, the Supreme Court rejected the argument that an appeal under 9 U.S.C. § 16 should turn on the merits of the motion to compel arbitration. *See also id.* at 628 ("Jurisdiction over the appeal, however, must be determined by focusing upon the category of order appealed from, rather than upon the strength of the grounds for reversing the order."). In other words, if the FAA applied, this Court could not refuse to exercise jurisdiction over Amazon's appeal simply because it thought the motion to compel arbitration had no merit. This is also why the Court can exercise jurisdiction to consider whether the § 1 exemption applies in the first place. That is not the situation here, where this Court had already concluded in *Rittmann* that Jackson is exempt from the FAA by the time the action

was filed, and the scope of that exemption was not disputed in the proceedings below. The fact that Amazon disagrees with *Rittmann* does not mean Amazon made arguments concerning the § 1 exemption, nor that Amazon moved to compel—or could have moved to compel—under the FAA (which it did not). *See Kum Tat*, 845 F.3d at 983 ("[O]ur jurisdiction turns on whether Kum Tat 'invoked' the FAA, not whether it theoretically could have.") (internal citations omitted).

Further, as this Court and others have held, the FAA does not allow for interlocutory appeal of motions to compel brought under state law. *Kum Tat*, 845 F.3d at 983 ("Congress chose to authorize interlocutory review only of denials of arbitration motions brought 'under' the FAA"); *Sherwood v. Marquette Transp. Co.*, 587 F.3d 841, 843 (7th Cir. 2009) ("§ 16(a) does not apply to a motion to stay litigation when state rather than federal law is the source of the obligation to arbitrate."); *KCOM, Inc. v. Employers Mutual Casualty Co.*, 829 F.3d 1192, 1197-98 (10th Cir. 2016) (§ 16(a) is not "an avenue for interlocutory appeal of a motion to confirm brought under one of any fifty state laws"); *Hamrick*, 1 F.4th at 1352 ("[T]he interlocutory appeal section of the Federal Arbitration Act doesn't carve out an exception to the general rule for interlocutory orders denying motions to compel arbitration based on state law.").

*Finally*, Amazon is likely to argue that, because 9 U.S.C. § 16 did not exist when the FAA was first enacted in 1925, 9 U.S.C. § 1 could not refer to the grants

17

of jurisdiction in 9 U.S.C. § 16. True, but the inverse also applies: when Congress enacted 9 U.S.C. § 16, it was fully aware of the § 1 exemption and chose to limit the appealability of orders to those brought under 9 U.S.C. §§ 3-4. *See also Kum Tat*, 845 F.3d at 983 ("Congress chose to authorize interlocutory review *only of denials of arbitration motions brought under the FAA*, and we cannot invoke the policy of the FAA to expand the scope of appellate jurisdiction in § 16.") (emphasis added, internal quotations omitted).

### B. There Is No Appellate Jurisdiction Under 28 U.S.C. § 1292(a)(1) Because A Denial Of A Motion To Compel Arbitration Is Not A Denial Of An Injunction

28 U.S.C. § 1292(a)(1) confers jurisdiction over "[i]nterlocutory orders … granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." As the majority of circuits have held, a denial of a motion to compel arbitration is not the same as the denial of injunctive relief, so as to qualify for interlocutory appeal under 28 U.S.C. § 1292(a)(1). *Queipo v. Prudential Bache Securities, Inc.*, 867 F.2d 721, 722 (1st Cir. 1989) ("[O]rders granting or denying stays of court proceedings are not appealable … as injunctions under 28 U.S.C. § 1292(a)(1)" and "[t]he same reasoning applies to an order denying a motion to stay proceedings and compel arbitration"); *Medtronic AVE, Inc. v. Advanced Cardiovascular Systems, Inc.*, 247 F.3d 44, 52 (3d Cir. 2001) ("[I]n accordance with the weight of authority, [] the order denying the stay [pending

18

arbitration] should not be regarded as appealable as an order denying an interlocutory injunction under section 1292(a)(1)"); *Jolley v. Paine Webber Jackson & Curtis, Inc.*, 864 F.2d 402, 403 (5th Cir. 1989) ("[W]e have recently held that an order denying a stay pending arbitration is not appealable under § 1292(a)(1)."); *Central States, Southeast and Southwest Areas Pension Fund v. Central Cartage Co.*, 84 F.3d 988, 992 (7th Cir. 1996) ("[A]ppellants have failed to show that the district court's order [denying a motion to compel arbitration] has the practical effect of refusing to grant an injunction."); *Industrial Wire Prods., Inc. v. Costco Wholesale Corp.*, 576 F.3d 516, 520 (8th Cir. 2009) ("[T]his court has already rejected the argument that section 1292(a)(1) grants jurisdiction to review denials of motions to compel arbitration because of their alleged 'injunctive effect.'"); *Administrative Mgmt. Servs., Ltd. v. Royal Am. Managers, Inc.*, 854 F.2d 1272, 1274 (11th Cir. 1988) (holding there was no appellate jurisdiction over a denial of a motion to compel arbitration "as an interlocutory order under 28 U.S.C. § 1292"); *DSMC Inc. v. Convera Corp.*, 349 F.3d 679, 682 (D.C. Cir. 2003), *abrogated on other grounds*, *Carlisle*, 556 U.S. 624 (2009) ("[T]his court has long held that orders denying motions to compel arbitration are not appealable under Section 1292(a)(1).").

Admittedly, this Court reached a different conclusion in *Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Aloha Airlines, Inc.*, 776 F.2d 812

(9th Cir. 1985). *Id.* at 815 (concluding a denial of a motion to compel arbitration "[is] in the nature of an injunction"). "However, that decision was reached prior to the enactment of 9 U.S.C. § 16 which uniquely addresses appeals from denials of motions to compel and stay arbitration." *In re Universal Service Fund Telephone Billing Pracs. Litig. v. Spring Commc'ns Co.*, 428 F.3d 940, 944 n.4 (10th Cir. 2005), *abrogated on other grounds*, *Carlisle*, 556 U.S. 624 (2009). "Because § 16 specifically deals with the subject of arbitration, it has super[s]eded [this Court's earlier decision] and makes § 1292(a)(1) inapposite to this case." *Id.*; *see also Briggs & Stratton Corp. v. Local 232, Int'l Union, Allied Industrial Workers of America (AFL-CIO)*, 36 F.3d 712, 714 (7th Cir. 1994) ("Congress eliminated the significance of this issue for most purposes by adding a new section to the Arbitration Act, spelling out which interlocutory orders concerning arbitration are appealable and which are not."); *McLaughlin Gormley King Co. v. Terminix Int'l Co.*, 105 F.3d 1192, 1193 (8th Cir. 1997) ("Terminix argues that we have jurisdiction under 28 U.S.C. § 1292(a)(1) because of the order's 'injunctive effect.' However, appealability is governed by the specific appeal provisions added to the Federal Arbitration Act in the 1988 Judicial Improvements and Access to Justice Act."); 15B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3914.17 (2d ed. 2016) ("Section 16 establishes the basic framework for appeals … These rules should supersede any attempt to rely on the general interlocutory

injunction appeal provisions of § 1292(a)(1)."); 16 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3923 (3d ed. 2021) ("The explicit provisions of § 16 should prevail in these cases, superseding any use that might be made of § 1292(a)(1).").[4]

To the extent *Aloha Airlines* has not been overruled, this Court should reconsider its holding in light of the majority view and enactment of 9 U.S.C. § 16. Indeed, this Court's later decisions in *Craft* and *Kum Tat* did not analyze whether 28 U.S.C. § 1292(a)(1) provided a separate basis for jurisdiction when the FAA did not apply, indicating that *Aloha Airlines* is no longer good law. *Craft*, 177 F.3d at 1094 (because "the FAA is inapplicable to the CBA that governs Craft's employment … we have no jurisdiction over Campbell Soup's interlocutory appeal"); *Kum Tat Ltd.*, 845 F.3d at 983 ("Congress chose to authorize interlocutory review *only of denials of arbitration motions brought under the FAA*, and we cannot invoke the policy of the FAA to expand the scope of appellate jurisdiction in § 16.") (emphasis added, internal quotations omitted).

---

[4] Amazon will argue this treatise does not support Jackson's argument because it states, in cases involving state law arbitration issues, "it *may* be possible to interpret § 1292(a)(1) with some artistry to achieve the same rules as those embodied in § 16." CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3923 (3d ed. 2022) (emphasis added). The majority of circuits have foreclosed that possibility. Further, this Court has rejected attempts to seek interlocutory appeal of state-law orders regarding arbitration and did not consider 28 U.S.C. § 1292(a)(1) as a separate basis for jurisdiction on these occasions. *Kum Tat Ltd.*, 845 F.3d at 983.

A minority position has also been reached by the Fourth Circuit (albeit, three days after the FAA was amended to add 9 U.S.C. § 16) and the Federal Circuit. *Kansas Gas & Elec. Co. v. Westinghouse Elec. Corp.*, 861 F.2d 420, 422 (4th Cir. 1988) (concluding an order denying a motion to compel arbitration is appealable under 28 U.S.C. § 1292(a)(1) because "orders denying arbitration do have an injunctive effect and have "serious, perhaps irreparable, consequence."); *Microchip Tech. Inc. v. U.S. Philips Corp.*, 367 F.3d 1350, 1455 (Fed. Cir. 2004) ("[S]ection 16 renders appealable under section 1292(a)(1) the denial of an injunctive order (*i.e.*, motions to compel arbitration) that otherwise would not be appealable."). This position is easily disposed of. As to *Microchip Tech. Inc.*, the Federal Circuit's reasoning rested on the fact that 9 U.S.C. § 16 "*renders appealable* under section 1292(a)(1) the denial of an injunctive order (*i.e.*, motions to compel arbitration) *that otherwise would not be appealable*." *Microchip Tech. Inc.*, 367 F.3d at 1455 (emphasis added). In other words, the Federal Circuit conceded that a denial of a motion to compel arbitration would not normally be appealable under 28 U.S.C. § 1292(a)(1), and is only appealable because of the provisions of the FAA. Thus, if the FAA does not apply—as is the case here—then the denial is not appealable under 28 U.S.C. § 1292(a)(1).

In any event, the conclusion that a denial of a motion to compel arbitration is akin to the denial of an injunction is not correct. As the Seventh Circuit put it, an

order denying a motion to compel arbitration does not cause the "serious, irreparable injury" that the denial of an injunction would, and thus does not qualify for interlocutory appeal under 28 U.S.C. § 1292(a)(1):

> Searching for an injunction in orders controlling the progress of litigation has an artificial quality. Every decision to proceed or wait imposes costs, but none resolves the merits. If potential costs of procedural decisions make for appellate jurisdiction then many interlocutory orders are appealable—a step the Supreme Court has told us to resist. It is, after all, established that the costs of litigation are not "irreparable injury." If a district court errs in conducting a lawsuit when a contract calls for arbitration, that mistake may be corrected on appeal from a final decision.

*Briggs & Stratton Corp.*, 36 F.3d at 714 (internal citations omitted). The First Circuit reached the same conclusion:

> True, if plaintiffs are correct that no valid arbitration agreement existed, then the denial of immediate review will have required them to have incurred the expense of arbitration proceedings, but this type of inconvenience resulting when a sound defense interposed early in a litigation is erroneously rejected is the price of the final judgment rule and does not constitute irreparable harm. The same reasoning applies to an order denying a motion to stay proceedings and compel arbitration. If on appeal from a final judgment that order is overturned, denial of immediate review will have required appellant to have incurred the expense of court proceedings, but this potential inconvenience does not constitute irreparable harm and therefore does not render the order appealable as a collateral order.

*Queipo*, 867 F.2d at 722 (internal quotations omitted). This Court has likewise concluded that "being required to defend a suit [] does not constitute a clear case of hardship or inequity." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (internal quotations omitted). Accordingly, the fact

23

that a party claiming an arbitration agreement exists will be forced to incur expenses does not mean that a denial of a motion to compel arbitration causes "serious, irreparable injury."

## II. THE DISTRICT COURT CORRECTLY HELD THAT JACKSON WAS NOT BOUND BY THE 2019 TOS

### A. Amazon Did Not Meet Its Burden To Demonstrate Jackson Was On Notice Of The 2019 TOS

As this Court has held, "[a]s the party alleging the existence of a contract, [Amazon] has the burden to prove *each and every element* of a valid contract—including mutual assent." *Stover*, 978 F.3d at 1086 (emphasis added); *see also Knutson*, 771 F.3d at 565 ("Sirius XM, as the party seeking to compel arbitration, has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence."). California law likewise states that "the petitioning party [Amazon] has the burden of proving the existence of a valid arbitration clause." *Larian v. Larian*, 19 Cal. Rptr. 3d 916, 922 (Cal. Ct. App. 2004). And the 2016 TOS imposes the same burden on Amazon to notify Jackson of any updates to the terms, such as the 2019 TOS. ER 179, at § 13 ("Amazon may modify this Agreement, including the Program Policies, at any time *by providing notice to you*.") (emphasis added). To that end, Amazon's "evidence" is notable for what it does *not* show:

- Amazon's evidence does not show that it notified Jackson of the 2019 TOS, as Amazon agreed to do.

- Amazon's evidence does not show that Jackson received the

24

2019 TOS via e-mail or otherwise.

- Amazon's evidence does not show that Jackson opened any such e-mail or viewed the 2019 TOS.

- Amazon's evidence does not show the design and content of any such update e-mail, such as whether the 2019 TOS were included as a separate attachment to an e-mail, or as an inconspicuous hyperlink buried somewhere on an e-mail dealing with a completely different subject matter. The District Court noted Amazon's failure to introduce the update e-mail into evidence was a "tactical decision." ER 12:19-21.

Amazon's most glaring omission was its failure to present the actual e-mail allegedly sent to Jackson that ostensibly informed him of the updated terms. This is important because the design or content of the e-mail goes to whether Jackson had notice of the 2019 TOS. For instance, if the 2019 TOS was sent as part of an email dealing with other aspects of the Amazon Flex program, with the updated terms referenced in an inconspicuous hyperlink, then Jackson would likely not have notice of the 2019 TOS. Because this question was so crucial, Amazon's failure to submit *any* evidence as to the design and content of the e-mail meant it could not possibly have met its burden of proof.

Indeed, at the August 3, 2021 hearing, the District Court emphasized that, despite multiple opportunities to submit the e-mail that was allegedly sent to Jackson, Amazon's decision not to do so "was just a tactical decision. [Amazon] had an opportunity to submit the evidence that [Amazon] submitted and that is the decision that [Amazon] made." ER 12:19-21. The District Court also questioned

how Amazon could meet its burden of proof in light of this failure:

> The Court: [W]ith respect to the evidence in the record … there is a declaration that an email was sent, but there is nothing that indicates what the email said; correct? Is that fair to say?

> Mr. Kenneally: I think that is fair, Your Honor.

ER 12:24-ER 13:3

> The Court: But looking at the declaration, page 14, it says, "Amazon sent the 2019 Terms of Service to plaintiff via email on October 3rd, 2019, and afterward he performed additional Flex deliveries." There is nothing in the declaration … that said that the email told them that the terms had been updated and that if he continued to use the service, you are assenting to those terms. The declaration just says "we sent an email." And so I guess why wouldn't I just assume that the email was blank, had no information on it?

ER 14:5-16.

> The Court: [I]s it fair to say that the only evidence in the record is that an email was sent on October 3rd, and there is no evidence that the email contained anything, anything to alert somebody that there were new Terms of Service or anything to alert the person that if they continued to provide services they were assenting to the 2019 agreement?

> Mr. Kenneally: I don't think that that is quite fair, at least with respect to the first point, Your Honor.

> The Court: Okay. Then tell me where -- tell me what I am missing.

> Mr. Kenneally: I just interpret that Amazon distributed the 2019 Terms of Service to imply that there was some notification that the Terms of Service had changed.

> The Court: What would I imply? Like, what -- you know, like in writing up the facts of the case, what would I say that the drivers were told on the email?

Mr. Kenneally: I don't think you could fill in that blank, Your Honor. I think that all we have is what is in the paragraph I just quoted.

The Court: So all I could say is they sent an email. There is nothing in the record that there was any text on the email, and nothing on the email advised them that if they continued to provide services that they would be -- the 2019 agreement would apply. Is that fair?

Mr. Kenneally: I hate to repeat myself, but I think all that it says is that they distributed the 2019 Terms of Service via email or they sent the 2019 Terms of Service via email.

The Court: And that is it?

Mr. Kenneally: There is nothing else in the record. That is correct.

ER 16:19-ER 17:25.

Jackson's counsel echoed these concerns at the hearing, arguing "what the email may have looked like … makes a world of difference":

Mr. Deckant: I am speculating … perhaps the email just said, hey, update on Amazon Flex, new info for drivers; here is some new events going on; here are some new rates; here are some new delivery routes; and, hey, by the way, we also updated Terms of Service; click the link, follow the hyper link here, and then you can read all about it. I don't know, that evidence was not provided.

ER 38:10-23.

The Second Circuit's decision in *Starke v. SquareTrade, Inc.*, 913 F.3d 279 (2d Cir. 2019) also illustrates why evaluating the design and content of the e-mail is so essential. In that case, the defendant submitted the design and content of the e-mail in question to the court. However, the Second Circuit held "[s]everal things

about the transaction and the email Starke received from SquareTrade following the Amazon confirmation email lead us to conclude that Starke did not have reasonable notice of the arbitration provision, which was contained only in the Post-Sale T&C."

*Starke*, 913 F.3d at 292.  In particular, the Second Circuit highlighted the following:

> First, SquareTrade never … put Starke on notice that his "Service Contract" would come in the form of a hyperlink, rather than in the body of the email.
>
> …
>
> Second, when Starke opened the email from SquareTrade he was presented with a chart titled "Your Protection Plan" … This information took up approximately half of the email … [N]one of the language in the cluttered email directed Starke's attention to the hyperlink containing the Post-Sale T&C.
>
> Third … [t]he "Terms & Conditions" hyperlink is some of the smallest text in the email and comes after several prompts unrelated to the enclosure of the contract … [T]he interface here is cluttered with diverse text, displayed in multiple colors, sizes and fonts, and features various buttons and promotional advertisements that distract the reader from the relevant hyperlink.

*Starke*, 913 F.3d at 292-93.  In other words, *Starke* highlights that even if an e-mail is sent to a user, the design and content of the e-mail can undermine any purported notice to a user.  The same problems could be present here, which would cut against notice: the 2019 TOS could have been included in a hyperlink, the hyperlink could be buried, and the e-mail could have irrelevant and largely distracting information. Amazon's failure to submit the content of the e-mail should not give it a pass on this analysis.

28

In short, without the benefit of the design and content of the e-mail in the record—which Amazon had multiple opportunities to submit but deliberately chose not to—it cannot be concluded that the e-mail put Jackson on notice of the updated terms, to the extent he even received it. And without such a conclusion, it cannot be said that Amazon met its initial burden of proof as to notice of and assent to the 2019 TOS.

Amazon's arguments are unavailing. *First*, Amazon contends that "Plaintiff promised to be responsible for reviewing this Agreement regularly to stay informed of any modifications." Opening Brf. at 17-18. Amazon glazes over the text preceding this "obligation": "Amazon may modify this Agreement, including the Program Policies, at any time *by providing notice to you*." ER 179, at § 13 (emphasis added). In other words, if Amazon provided notice to Jackson of updated terms, then Jackson was required to review them. But as this Court has held:

> [Jackson] had no obligation to investigate whether [Amazon] issued new terms without providing notice to [him] that it had done so. Indeed, the opposite rule would lead to absurd results: contract drafters who included a change-of-terms provision would be permitted to bind individuals daily, or even hourly, to subsequent changes in the terms. The absence of limits on the frequency or substance of changes in terms subverts the basic rule of contract law that a contract exists where the parties assent to the same thing in the same sense, so that their minds meet.

*Stover*, 978 F.3d at 1086.

California law echoes these requirements. "Parties to a contract have no

obligation to check the terms on a periodic basis to learn whether they have been changed by the other side." *Douglas v. United States Dist. Court for Cent. Dist. of California*, 495 F.3d 1062, 1066 (9th Cir. 2007). "Indeed, a party can't unilaterally change the terms of a contract; it must obtain the other party's consent before doing so." *Id.* "This is because a revised contract is merely an offer and does not bind the parties until it is accepted." *Id.* "And generally an offeree cannot actually assent to an offer unless he knows of its existence." *Id.* (internal quotations omitted). Thus, because Amazon did not provide sufficient notice to Jackson of the updated terms, Jackson was under no obligation to check for updates.

*Second*, Amazon contends Jackson was on notice of the 2019 TOS because he "continued to perform Amazon Flex delivery services and accessed the Amazon Flex app for that purpose." Opening Brf. at 19. But Jackson was not required to view the 2019 TOS in order to continue to use the Amazon Flex app. ER 170, at ¶ 14. The fact that a hyperlink to the 2019 TOS existed somewhere on the app is not sufficient by itself to bind Jackson. *Douglas*, 495 F.3d at 1066 ("[G]enerally an offeree cannot actually assent to an offer unless he knows of its existence."); *Benson v. Double Down Interactive, LLC*, 798 F. App'x 117, 119-20 (9th Cir. 2020) ("Repeated use of a website or mobile application does not contribute to constructive notice because users are no more likely to stumble upon inconspicuous hyperlinks on their hundredth or thousandth visit than they are on their first."); *Wilson v.*

*Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019) ("[T]here is no reason to assume the users will click on the settings menu simply because it exists.").

Amazon's authorities on this point actually support Jackson's argument. Cal. Civ. Code § 1589 states "[a] voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, *so far as the facts are known, or ought to be known*, to the person accepting." (Emphasis added). Because Amazon did not meet its burden to show that Jackson knew or had reason to know of the existence of the 2019 TOS, Jackson's continued use of the app does not constitute acceptance of the updated terms. This Court cited this exact language in *Hart v. Charter Commc'ns, Inc.*, 814 F. App'x 211, 213 (9th Cir. 2020). Further, the defendant in *Hart* submitted the e-mail that was provided to the plaintiff: a billing statement that included a notice stating, "You have a new TWC subscriber agreement, which contains an arbitration clause, a clause that may limit the time you have to bring a claim against us, [and] other important terms." *Hart v. Charter Commc'ns, Inc.*, Case No. 8:17-cv-556, ECF No. 30-4, Ex. C at 35 (C.D. Cal. July 24, 2017). Amazon made no such demonstration.

*Third*, Amazon claims "[s]everal courts in this circuit have held that a user of a technology platform who receives an email about an update to terms of service and continues to use the platform is bound by the updated terms." Opening Brf. at 20. Both of Amazon's authorities are distinguishable and actually undermine Amazon's

position. In *Webber v. Uber Tech., Inc.*, 2018 WL 10151934, at *4 (C.D. Cal. Sept. 5, 2018), the users manifested assent to the updated terms and conditions in the first instance through a clickwrap agreement. Uber then sent the users an e-mail as *secondary* notice. *Id*.

Critically, however, Uber *actually submitted* the design and content of the e-mail as evidence, which "notif[ied] [users] that Uber's Terms had been updated, and that continued use of the service would constitute assent to those Terms." *Id.*; *see also Webber v. Uber Tech., Inc.*, Case No. 2:18-cv-2941, ECF No. 31, at ¶ 15 (N.D. Cal. Feb. 9, 2018) ("[A]n e-mail with the subject line, 'We've Updated Our Terms of Use,' was sent to the e-mail addresses associated with the accounts [of the relevant users]."); *id.*, ECF No. 31-6 (copy of e-mail that was sent to Uber users). Such facts distinguish *Webber*, as the District Court pointed out. *See* ER 14:9-14 ("There is nothing in the declaration that contains the -- you know, the information that is in the *Webber* case that said that the email told them that the terms had been updated and that if he continued to use the service, you are assenting to those terms. The declaration just says 'we sent an email.'"). In short, the defendant in *Webber* provided multiple forms of notice to users and actually submitted the design and content of the notice it sent, unlike Amazon here.

*In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016) is distinguishable and supports Jackson's position for the same reason. In that

case, Facebook informed users of the updated terms of service through a "jewel notification" on each user's "individual Facebook newsfeed." *Id.* at 1167. Facebook *also* sent users an e-mail, which "provided notice that the terms of the user agreement were changing." *Id.* So again, unlike here, Facebook (i) provided two forms of notice, and (ii) provided the content of the e-mail that was sent to users.

In contrast to Amazon's authorities, multiple courts have held that simply sending an e-mail, as Amazon did here, is insufficient to demonstrate notice of and assent to updated terms. For instance, the Second Circuit—applying California law—rejected the same argument Amazon raises here:

> Trilegiant asserts that the fact that we can assume that the email was received by the plaintiffs is enough to support the conclusion that they were on inquiry notice of its terms. But that someone has received an email does not without more establish that he or she should know that the terms disclosed in the email relate to a service in which he or she had previously enrolled and that a failure affirmatively to opt out of the service amounts to assent to those terms.

*Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 126 (2d Cir. 2012); *see also Engen v. Grocery Delivery E-Services USA Inc.*, 453 F. Supp. 3d 1231, 1240 (D. Minn. 2020) (holding email notice of terms insufficient because "[t]he email was not sent to inform Engen of modifications to the 2016 Terms and Conditions or the content of the 2018 Terms and Conditions"); *McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, 501 F. Supp. 3d 965, 984 (D. Or. 2020) ("[G]enuine disputes of material fact

exist as to the enforceability of the updated Terms and Conditions, making summary judgment inappropriate.").

*Finally*, Amazon chides the District Court for "rel[ying] on browsewrap cases." Opening Brf. at 26. This is ironic, given that Amazon does the same. Opening Brf. at 20 (citing *Webber* and *In re Facebook Biometric Info. Priv. Litig.*). Regardless, the District Court did not "rely" on these cases to form its conclusion. Instead, the District Court used these cases to explain the general proposition that a party seeking to compel another to arbitration must provide "individualized notice of the agreement's existence and contents." *Jackson*, 2021 559 F. Supp. 3d at 1139 (citing *Long v. Provide Com., Inc.*, 245 Cal. App. 4th 855, 862 (2016); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)). This Court has applied that proposition to e-mail-based contracts. *See Stover*, 978 F.3d at 1086.

Amazon separately claims that *Long* and *Nguyen* are distinguishable because "[i]n both *Long* and *Nguyen* [] the consumers submitted sworn declarations stating that they did not see the hyperlink that purportedly gave notice of the contractual terms and that they lacked actual notice." Opening Brf. at 26. But neither *Long* nor *Nguyen* turned on whether the plaintiffs had *constructive* notice of the terms, and whether the plaintiffs had constructive notice turned on the design and content of the webpages. Further, unlike here, the design and content of the webpages in *Long* and *Nguyen* were submitted as evidence, so the burden shifted to the plaintiffs to prove

their affirmative defenses. By contrast, Amazon failed to produce the design and content of its update e-mail, so Amazon failed to meet its initial burden of proof.

Amazon also attempts to distinguish *Stover* because it was the plaintiff in that case who sought to bind the defendant to the updated terms, and Amazon believes that "the plaintiff [in *Stover*] could easily have submitted evidence that she knew about the new terms if that were true; she, not the defendant, knew what she did and did not know at the time of the website visit." Opening Brf. at 27. Amazon's attempt falls flat. Whether the plaintiff or the defendant is the moving party, it is still incumbent on the movant "[a]s the party alleging the existence of a contract … to prove each element of a valid contract." *Stover*, 978 F.3d at 1086. And Amazon, like the movant in *Stover*, failed to meet its burden of proof regarding Jackson's notice of the updated terms. Further, Amazon's logic applies to its own argument: Amazon should be fully aware of the design and content of the e-mail it sent to Jackson, and likely has more ready access to that e-mail than Jackson does (to the extent Jackson even received it, which Amazon did not prove). Amazon decided not to submit the content of the e-mail, and it must live with the consequences of its decision.

### B. Because Amazon Did Not Meet Its Initial Burden, Jackson Was Not Required To Submit His Own Evidence

Despite the aforementioned deficiencies, Amazon attempts to shirk its burden

and pass the buck onto Jackson. The District Court was not persuaded by these attempts, and this Court should not be either. Although Amazon admonishes Jackson for "submit[ing] no evidence to" rebut Amazon's deficient presentation (Opening Brf. at 16), this was not Jackson's responsibility. Under this Court's precedent, California law, *and* Amazon's own contract, it was *Amazon's* burden in the first instance to submit evidence demonstrating "mutual assent." *Stover*, 978 F.3d at 1086; *Knutson*, 771 F.3d at 565; ER 179, at § 13. If—and only if—Amazon met its burden of proof as to assent was Jackson required to prove his defenses. The California Court of Appeals chronicled this burden-shifting analysis in *Larian*:

> Before a party may be compelled to arbitrate a claim, the petitioning party has the burden of proving the existence of a valid arbitration clause and the dispute is covered by the agreement. *If the moving party meets its burden*, the opponent of arbitration has to prove by a preponderance of the evidence any defense to the petition or motion to compel the dispute to be arbitrated.

*Larian*, 19 Cal. Rptr. 3d at 922 (emphasis added). Thus, because Amazon did not meet its initial burden, Jackson was not required to submit any evidence to the contrary. The deficiencies in Amazon's "evidence" were dispositive of Amazon's motion on their own.

\* \* \*

In sum, the District Court correctly concluded that Jackson was not bound by the 2019 TOS because Amazon failed to meet its burden of proof to demonstrate Jackson's "individualized notice of the agreement's existence and contents."

*Jackson*, 559 F. Supp. 3d at 1140-41 (internal quotations omitted). Amazon was required to demonstrate that it provided notice under this Court's precedents, California law, and Amazon's own contract. *Stover*, 978 F.3d at 1086; *Knutson*, 771 F.3d at 565; *Larian*, 19 Cal. Rptr. 3d at 922; ER 179, at § 13. Amazon failed to meet its burden because Amazon neither produced the e-mail it sent to Jackson nor showed that Jackson actually received the e-mail. *Schnabel*, 697 F.3d at 126; *Starke*, 913 F.3d at 292-93. This is unlike every case cited by Amazon in which either (i) there was some other form of notice, and/or (ii) the design and content of the e-mail was actually produced. *See*, *e.g.*, *Webber*, 2018 WL 10151934, at *4.

Further, even if the 2019 TOS applies, Amazon waived its argument that the arbitrability of Jackson's claims should be decided by an arbitrator under the 2019 TOS. In its motion, Amazon asked the District Court to hold that Jackson's claims fell within the scope of the arbitration clause *in the 2019 TOS*, rather than specifically the 2016 TOS. ER 144:3-4. Amazon did not discuss delegation until its reply (ER 89-91), and even then, it still asked the District Court to find that Jackson's claims were arbitrable under the 2019 TOS. Amazon has thus waived its argument that the 2019 TOS delegates the issue of arbitrability to an arbitrator, and the District Court's conclusion that the claims are not arbitrable should be affirmed. *United States ex rel Dorsa v. Miraca Life Sciences, Inc.*, 33 F.4th 352, 357 (6th Cir. 2022) (finding defendant waived right to have arbitrator determine issue of arbitrability where

"Miraca invited the district court to rule on the arbitrability of the claim" but "[o]n reply, Miraca changed course to contend that an arbitrator had to rule on the arbitrability of the claim") (emphasis removed).

## III. THE DISTRICT COURT CORRECTLY HELD THAT JACKSON'S PRIVACY-BASED CLAIMS DO NOT ARISE OUT OF OR RELATE TO THE EMPLOYMENT-SPECIFIC ARBITRATION CLAUSE IN THE 2016 TOS

Because Jackson did not assent to the 2019 TOS, Amazon could only move to compel arbitration under the 2016 TOS. The arbitration clause in the 2016 TOS states as follows:

> THE PARTIES WILL RESOLVE BY FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT, ANY DISPUTE OR CLAIM, WHETHER BASED ON CONTRACT, COMMON LAW, OR STATUTE, ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT, INCLUDING TERMINATION OF THIS AGREEMENT, TO YOUR PARTICIPATION IN THE PROGRAM, OR TO YOUR PERFORMANCE OF SERVICES.

ER 178, at § 11(a). Because Jackson and his fellow Amazon Flex Drivers are exempt from the FAA (*Rittmann*, 971 F.3d at 916), the District Court "applie[d] California state law to determine whether a valid agreement to arbitrate exists in this case." *Jackson*, 559 F. Supp. 3d at 1143. And under California state law, the District Court correctly concluded that Jackson's privacy-based claims, arising from and relating to Jackson's private activities undertaken on his private time, outside of work, on private Facebook groups, did not fall within the purview of the employment-related arbitration clause.

38

**A.    The District Court Correctly Held That Jackson's Privacy-Based Claims Were Not Subject To Arbitration**

As an initial matter, the District Court recognized that California law "incorporates many of the basic policy objectives contained in the Federal Arbitration Act, including a presumption in favor of arbitrability and a requirement that an arbitration agreement must be enforced on the basis of state law standards that apply to contracts in general." *Jackson*, 559 F. Supp. 3d at 1143-44. But the District Court also recognized that "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate." *Id.* at 1144 (citing *Rice v. Downs*, 248 Cal. App. 4th 175, 185 (2016)). The California Supreme Court has likewise held that, even in arbitration agreements, "ambiguities in written agreements are to be construed against their drafters":

> [W]here, as here, the written agreement has been prepared entirely by the employer, it is a well established rule of construction that *any ambiguities must be construed against the drafting employer and in favor of the nondrafting employee*. Moreover, the rule requiring the resolution of ambiguities against the drafting party *applies with peculiar force in the case of a contract of adhesion*.
>
> …
>
> *This general principle of contract interpretation applies equally to the construction of arbitration provisions*. Where the drafter of a form contract has prepared an arbitration provision whose application to a particular dispute is uncertain, ordinary contract principles require that the provision be construed *against the drafter's interpretation and in favor of the nondrafter's interpretation*.

*Sandquist v. Lebo Automotive, Inc.*, 1 Cal. 5th 233, 247-48 (2016) (emphases added; internal citations omitted)[5]; *Dufour v. Allen*, 748 F. App'x 150, 151 (9th Cir. 2019) ("California recognizes the doctrine of *contra proferentem*, that is, construing ambiguous agreements against the drafter") (citing Cal. Civ. Code § 1654). These principles are consistent with the "equal footing" rule, which requires arbitration agreements to be "as enforceable as any other contract, *but not more so*." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967) (emphasis added).

Guided by these principles, the District Court turned to two instructive cases that should also govern this Court's analysis. *First*, the District Court looked to *Howard v. Goldbloom*, 30 Cal. App. 5th 659 (2018). In *Howard*, "the employee plaintiff Howard alleged that a company's board of directors abused their corporate power and breached their fiduciary duties by wrongfully diluting Howard's interest in the company's stock." *Jackson*, 559 F. Supp. 3d at 1144 (citing *Howard*, 30 Cal.

---

[5] To the extent Amazon's pre-*Sandquist* authorities are inconsistent with *Sandquist*, they have been overruled. *Cruise v. Kroger Co.*, 233 Cal. App. 4th 390, 397 (2015); *EFund Cap. Partners v. Pless*, 150 Cal. App. 4th 1311, 1321 (2007); *Gravillis v. Coldwell Banker Residential Brokerage Co.*, 143 Cal. App. 4th 761, 771 (2006); *Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 915 (Cal. 1997); *Wagner Constr. Co. v. Pac. Mech. Corp.*, 157 P.3d 1029, 1032 (Cal. 2007). The motion to compel arbitration in *Moses H. Cone Memorial Hosp. v. Mecury Constr. Corp.*, 460 U.S. 1, 4 (1983) was brought "under § 4 of the [FAA]" rather than California law, and is thus inapposite.

App. 5th at 661).  The defendant moved to compel arbitration, citing "Howard['s] agree[ment] that any and all controversies, claims or disputes with anyone … arising out of, relating to, or resulting from Howard's employment … shall be subject to binding arbitration." *Howard*, 30 Cal. App. 5th at 665 (cleaned up).  A second arbitration clause also required arbitration of "any and all controversies, claims, or disputes arising out of, relating to, or resulting from this Agreement." *Id.* at 667. The defendant argued the dispute was subject to arbitration because Howard "possesse[d] the majority of his shares as a result of his employment with, and separation from, the company. That is, he received many of the shares as compensation." *Id*.

Despite the purportedly broad language of those provisions—which, like the arbitration clause here, included the terms "in any way" and "relating to"—the California Court of Appeals found the plaintiff's shareholder dispute did not fall within the ambit of the arbitration clauses:

> [T]he harm Howard suffered is not measured by or dependent on the terms of his employment.  Howard's claim is instead rooted in, and any harm he suffered is measured by, his rights as a company stockholder … Defendants' fiduciary duties to minority shareholders and alleged wrongs exist independently of any employment relationship between Howard and Kaggle … Any minority shareholder, whether or not the person had ever been employed at [the company], could bring the same claims.

*Id.* at 670.

41

*Second*, the District Court looked to *Oxy-Health, LLC v. H2 Enterprise, Inc.*, 2019 WL 6729646 (C.D. Cal. July 31, 2019), *aff'd*, 812 F. App'x 660 (9th Cir. 2020). In *Oxy-Health*, "[p]laintiff Oxy-Health, LLC, brought trademark infringement and related claims against its former employee Ching Wen Yeh and his business, H2 Enterprises." *Oxy-Health*, 812 F. App'x at 661. Specifically, the plaintiff had been permitted "to set up [a website] … to market Oxy-Health's products" during his employment, but plaintiff instead "attempted to sell used [Oxy-Health's] chambers through the website." *Oxy-Health*, 2019 WL 6729646, at *1. As an employee, the plaintiff had also "agree[d] that any and all controversies, claims, or disputes with anyone … arising out of, relating to, or resulting from your employment with the company or the termination of your employment with the company, including any breach of this agreement, shall be subject to binding arbitration." *Id.* at 2. The defendant argued the dispute was subject to arbitration because it "related to" Mr. Wen's employment with Oxy-Health. *Id.* at 4.

Despite the purportedly broad language in the arbitration clause—which, again, is similar to the language in the 2016 TOS here—the district court found (and this Court affirmed) that "the words 'from your employment' had a limiting effect on the scope of the Agreement" and denied the motion. *Id.* The district court further noted that "none of Plaintiff's claims relate to the interpretation or performance of the Agreement. Nor do they touch matters covered by the Agreement." *Id.*; *see also*

*Oxy-Health*, 812 F. App'x at 661-62 (claims "did not arise out of, relate to, or result from Wen's prior employment with Oxy-Health" because the claims could "be resolved entirely without reference to Wen's former employment by Oxy-Health").

The District Court also contrasted these on-point authorities with the lone, off-point authority cited by Amazon. In *Cristo v. Charles Schwab Corp.*, 2018 WL 1737544, at *1 (S.D. Cal. Apr. 11, 2018), the plaintiff "agree[d] to settle by arbitration any controversy between myself and Schwab and/or any Schwab officers, directors, employees or agents relating to the Account Agreement, my Brokerage Account or account transactions, or in any way arising from my relationship with Schwab." The plaintiff brought claims "stemming from Defendants' production of Plaintiff's financial records to the Internal Revenue Service." *Id*. The *Cristo* court compelled plaintiff's claims to arbitration, but it was self-evident why: the plaintiff's claims clearly "concern[ed] a dispute between Plaintiff and Defendants relating to Plaintiff's Schwab accounts and ar[o]se out of the relationship between the two parties." *Id.* at 5. The District Court recognized this distinction. *See* ER 28:11-15 ("The Court: [I]t would seem that it is fairly easy to understand that if I have an agreement with Schwab and they have my statements and I think they should have given them for one year but they – they gave them for more than one year, that that would be included in the agreement.").

43

After carefully analyzing the facts of these cases and California law governing the applicability of arbitration clauses, the District Court correctly concluded that Jackson's privacy-based claims did not fall within the ambit of his employment-specific arbitration agreement. While the 2016 TOS arbitration clause includes the language "arising out of or relating in any way to," Amazon circumscribed this clause by stating it only covers disputes arising out of or relating to "this agreement, including termination of this agreement, to your participation in the program, or to your performance of services." ER 178, at § 11(a). These employment-related examples evidenced the parties' intention that the arbitration clause only cover employment-related matters. Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); Cal. Civ. Code § 1648 ("However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."); *see also Oxy-Health*, 812 F. App'x at 661 ("The district court properly held that the provision stating that this agreement to arbitrate also applies to any disputes that the company may have with you, read in context, is limited to employment-related disputes. This limitation is necessary to give effect to every part of the agreement, each clause helping to interpret the other.") (internal quotations omitted); *Rice*, 248 Cal. App. 4th at 188 ("[E]ven under a very broad arbitration provision, such as 'any controversy or claim arising out of

or relating to this agreement,' tort claims must have their roots in the relationship between the parties which was created by the contract before they can be deemed to fall within the scope of the arbitration provision.") (internal quotations omitted).

Further, neither Jackson's claims nor the activities underlying them arise out of or relate to the "agreement, including termination of [the] agreement, to [his] participation in the program, or to [his] performance of services." Posting in private Facebook groups on Jackson's private time, outside of work, did not relate to, for instance, having to making a delivery, pick up a package, the amount Jackson was paid to be an Amazon Flex Driver, or any of the alleged perks bestowed on Amazon Flex Drivers. Nor were the posts made on some official Amazon group thread, or Amazon-sponsored social media platform. Instead, Jackson posted in the Facebook groups as a private citizen and discussed topics with other co-workers as private citizens, in the same way co-workers would chat after work at a bar.

Thus, "[t]he alleged wrongs 'exist independently' of Plaintiff's employment relationship with Amazon." *Jackson*, 559 F. Supp. 3d at 1145 (citing *Howard*, 30 Cal. App. 5th at 670). The fact that the private Facebook groups were only populated with Amazon Flex Drivers or discussed the Amazon Flex program is not dispositive. *Wireless Warehouse, Inc. v. Boost Mobile, LLC*, 2010 WL 891329, at *5 (C.D. Cal. Mar. 10, 2010) ("[T]hat a claim would not have arisen but for the parties' agreement

is not determinative.") (internal quotations omitted) (citing *Tracer Research Corp. v. National Env't Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994)).

Indeed, each of Jackson's claims can be "resolved entirely without reference to [Jackson's] [] employment by [Amazon]." *Oxy-Health*, 812 F. App'x at 661-62. For instance, whether Jackson can state a claim under the Stored Communications Act would turn on if (i) Facebook is an "electronic communication service," (ii) the Facebook posts were in "electronic storage," (iii) the Facebook groups were in fact private, and (iv) whether Amazon was "authorized" to access the Facebook groups. *See* 18 U.S.C. § 2701(a). Similarly, whether Jackson can state a claim under the California Invasion of Privacy Act or the federal Wiretap Act turns on whether (i) the Facebook posts were "in transit," (ii) Amazon read the contents of any communication, and (iii) if Amazon had Jackson's prior consent to read those Facebook posts. Cal. Penal Code § 631(a); 18 U.S.C. § 2511(1).

None of the elements of those claims turns on whether Jackson is an Amazon Flex Driver, or even what Jackson discussed in the private Facebook groups. Jackson could have been a non-Amazon employee in a private Facebook group or discussed walking his dog with other Amazon Flex Drivers, and he still would have a claim against Amazon if the aforementioned elements were meant. Thus, the facts that matter were those necessary to state a claim, *not* any contextual background. *QED Holdings, LLC v. Block*, 2015 WL 12659935, at *7 (C.D Cal. June 11, 2015)

("[W]hile the Court must examine the factual allegations rather than the legal causes of action asserted to determine whether a claim falls within the scope of the arbitration provision, Plaintiff's Lanham Act claims need not be submitted to arbitration simply because some facts relating to the Employment Agreement are also relevant to provide context for the Lanham Act claims."); *see also Marsch v. Williams*, 23 Cal. App. 4th 250, 252-53, 256 (1994). And those facts have nothing to do with Jackson's "participation in the program" or "performance of services." *Jackson*, 559 F. Supp. 3d at 1146 ("The claims alleged in the FAC arise from Amazon's alleged intrusion into Plaintiff's private Facebook groups.").

Further, Amazon's interpretation of the 2016 TOS would require Jackson to arbitrate his claims any time he mentioned "Amazon Flex Driver" in a sentence, which is clearly an absurd result. This would have a chilling effect on employee speech outside of the workplace, requiring the arbitration of claims stemming from the improper acquisition of communications between employees who air grievances to co-workers after-hours, or who complain about their jobs to their spouses. And it cannot have been the intent of Jackson—or even Amazon—to agree to arbitrate claims arising from or relating to private communications on private Facebook groups conducted outside of the workplace. *Elias*, 2015 WL 1455910, at *7 (limiting "broad" arbitration clause to the parties' employment relationship, and noting "Under SC Fuels' [] interpretation, the Arbitration Agreement would apply if

47

it terminated Elias and she was injured 25 years later by an SC Fuels truck. Absent supporting language or evidence, we may not read the Arbitration Agreement so broadly"); *Mostowfi v. I2 Telecom Int'l, Inc.*, 2004 WL 7338797, at *3 (N.D. Cal. May 27, 2004) ("[T]he court should not interpret the FAA in a fashion that would frustrate the clear intentions of the parties under their particular arbitration agreement.") (internal quotations omitted).

In addition, there are no allegations that Amazon's social media surveillance program was operational in 2016 when Jackson first became an Amazon Flex Driver, and so neither party could have intended to arbitrate claims relating to it. *Cf. Revitch v. DIRECTV, LLC*, 977 F.3d 713, 714-15 (9th Cir. 2020) (denying motion to compel arbitration where "a satellite television company, which became an affiliate years after [an] agreement was signed, [sought to] use the wireless services agreement to compel arbitration in a suit brought against it"). Further, even if the surveillance program was operational when Jackson signed the 2016 TOS, he was not aware of it. ER 208, at ¶ 4 ("Mr. Jackson was unaware at the time that his electronic communications, including the information described above, were being intercepted in real-time and would be disclosed to Amazon, nor did Mr. Jackson consent to the same."). Amazon's secret monitoring of Jackson and other users of the private Facebook groups, and Jackson's lack of knowledge of the same, materially affected his agreement with Amazon. *Parino v. BidRack, Inc.*, 838 F.

Supp. 2d 900, 906 (N.D. Cal. 2011) (recognizing that material non-disclosure may amount to fraudulent inducement under California law, which would void any arbitration agreement); *Kanbar v. O'Melveny & Myers*, 849 F. Supp. 2d 902, 913 (N.D. Cal. 2011) ("[T]he personal decision to waive the right to a judicial forum must have been *knowingly made*.") (emphasis added).

### B.    Amazon's Arguments Are Unavailing

Amazon first contends that finding Jackson's claims fall outside of the arbitration provide would violate California's policy that "doubts concerning the scope of arbitrable issues [] have to be resolved in favor arbitration." Opening Brf. at 29 (quoting *Wagner Constr. Co. v. Pac. Mech. Corp.*, 157 P.3d 1029, 1032 (Cal. 2007)).  On the contrary, the California Supreme Court has held that "[w]here the drafter of a form contract has prepared an arbitration provision whose application to a particular dispute is uncertain, ordinary contract principles require that the provision be construed against the drafter's interpretation and *in favor of the nondrafter's* interpretation." *Sandquist*, 1 Cal. 5th at 248 (emphasis added).  Thus, any doubts as to the scope of the arbitration agreement must be resolve in favor of *Jackson* and against *Amazon*.

To that end, Amazon's argument rests on finding the surveillance of the private Facebook groups relates to Jackon's "performance of services" or

"participation" in the Amazon Flex program. Opening Brf. at 3.[6] Amazon's argument is not correct. As to performance of services, the "services" are defined in the 2016 TOS as the "transportation and delivery services contemplated by [the] Agreement"? ER 174. The private Facebook posts do not arise out or relate to Jackson making deliveries to Amazon customers. And as to participation in the program, it is ambiguous what "participation" means. Does "participation" mean an official element of the Amazon Flex program, such as agreeing to "maintain a mobile device compatible with the Amazon Flex app, any vehicle identified by [Jackson] within the Amazon Flex app [], … and any other equipment that [Jackson] ch[ose] to use or that [Jackson] need[ed] in order to provide the Services," and the inability to "participate in any employee benefit or other plans or arrangements"? ER 174, at § 2; ER 176, at § 5. Or does it include unofficial elements, such as if Jackson bonded with another Amazon Flex Driver over their shared employment and went out for dinner one day after deliveries? Ultimately, this ambiguity must "be construed *against* the drafter's interpretation [Amazon's] and *in favor of* the nondrafter's interpretation [Jackson's]." *Sandquist*, 1 Cal. 5th at 248 (emphasis added).

---

[6] Amazon conceded at oral argument that the claims do not arise out of relate to the agreement itself. ER 26:15-25 ("The Court: The parties will resolve by final and binding arbitration … any dispute or claim … arising out of or relating in any way to the agreement. In your view, does this dispute pertain to that language? Mr. Kenneally: Not to the final three words.").

Amazon also cites a number of cases for the proposition that "[t]o determine whether a claim falls with a provision's scope, a court should focus on the factual allegations, which need only touch matters covered by the contract containing the arbitration clause." Opening Brf. at 36 (internal quotations removed). Notwithstanding that the District Court did focus on Jackson's factual allegations giving rise to his claims—rather than the contextual background—Amazon's authorities simply stand for the proposition that a party cannot, for instance, label allegations giving rise to a breach of contract claim as a "negligence" claim in order to avoid an arbitration clause. This does not mean that every claim no matter the facts—such as Jackon's privacy claims here—must be compelled to arbitration if the facts giving rise to the claims "exist independently" of the "employment relationship." *Jackson*, 559 F. Supp. 3d at 1146.

In any event, each of Amazon's authorities is inapposite. In *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999), "Simula's claims of trade secret misappropriation [were] dependent" on the agreement between the parties because the agreement centered around the technology that the misrepresentations concerned. By contrast, none of Jackson's claims require that he be an Amazon Flex Driver or that he signed an agreement, and all of the claims concern private activities rather than those done in the course of Jackson's employment.

In *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846-87 (2d Cir. 1987), the plaintiff alleged "that the defendants overcharged [it] over an extended period of time for the piece goods [Genesco] had purchased from [the defendant] under the purchase and sale agreements." In other words, the claims "all derive[d] from the parties' transactions under the sales agreements," and there could be no dispute therefore that the claims were subject to the arbitration clause in the same agreement. *Id.* at 848. Not so here, where none of the claims arise out of or relate to Jackson's participation in the Amazon Flex program or his performance of services, and Amazon's surveillance of Jackson's private communications was never part of the 2016 TOS.

In *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315 (4th Cir. 1988), like Amazon's other authorities, the claims concerned a dispute central to the parties' distribution agreement. *J.J. Ryan & Sons*, 863 F.2d at 317 ("Ryan alleges that Rhone threatened to terminate the exclusive distribution agreements if Ryan did not accede to Rhone's valuation of Ryan's goodwill."). Again, this is not the case here, where Jackson's claims arise outside of his employment by Amazon and relate to private conduct by Jackson and Amazon outside the workplace.

In *Balan v. Tesla, Inc.*, 840 F. App'x 303, 304–05 (9th Cir. 2021), the defamation claims at issue all stemmed from statements about plaintiff's actions in the workplace or while she was acting as an employee (as opposed to outside of

work while she was acting as a private citizen), and thus "require[d] some understanding of [the scope of] Balan's employment" to determine whether the statements were truthful or not. Again, that is not the case with Jackson's conduct, which occurred outside of work while Jackson was acting as a private citizen, and requires no examination of Jackson's employment to determine their viability.

Finally, in *Optimum Productions v. Home Box Office*, 839 F. App'x 75 (9th Cir. 2020), the parties entered into an agreement with an arbitration clause that provided HBO with "the exclusive right to air [Michael] Jackson's first-ever televised concert – a performance in Bucharest, Romania." *Optimum Productions v. Home Box Office*, 2019 WL 2331466, at *1 (C.D. Cal. May 23, 2019), *aff'd*, 839 F. App'x 75. Michael Jackson's estate later claimed HBO used footage from this concert to support allegations in an HBO documentary that "[Michael] Jackson was abusing children on the same tour." *Optimum Productions*, 839 F. App'x at 78. It was clear, therefore, that the dispute arose from the parties' agreement because it concerned footage HBO had been permitted to air per the earlier agreement. Again, this is unlike here, where this dispute has nothing to do with the 2016 TOS or Jackson's employment with Amazon.

In sum, each of Amazon's authorities does not support its argument that the "factual allegations" here fall under the ambit of the arbitration clause. And each of Amazon's arguments generally are unavailing.

53

## IV. IF THIS COURT REVERSES THE DISTRICT COURT, THIS COURT SHOULD REMAND THE ACTION TO THE DISTRICT COURT TO DETERMINE THE UNCONSCIONABILITY OF THE ARBITRATION CLAUSE

Amazon briefly contends that if the 2019 TOS applies, "this Court should reverse and remand with instructions to compel [Jackson] to arbitration." Opening Brf. at 28. Not so. If either the 2019 TOS applies, or Jackson's claims fall within the scope of the 2016 TOS arbitration clause, the Court should remand to determine whether (i) California law rather than Delaware law applies to the 2019 TOS, and (ii) the arbitration clause in either agreement is unconscionable under California law. The District Court did not address these arguments because it "[c]oncluded that the arbitration provision does not cover the claims alleged by [Jackson]." *Jackson*, 559 F. Supp. 3d at 1146 n.4. But Jackson raised serious concerns that, under non-preempted principles of California law, the arbitration clause would be unconscionable. *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 241 (Cal. Ct. App. 2016) ("CW Painting did not meet its burden to show the FAA applied, and therefore its arguments the FAA preempts California statutes or case law lack merit."); *see also Discover Bank v. Superior Court*, 113 P.3d 1100, 1110 (Cal. 2005); *Armendariz v. Foundation Health Psychcare Services, Inc.*, 6 P.3d 669, 690 (Cal. 2000). Accordingly, if this Court reverses the District Court (and this Court should not), it should remand to allow the District Court to address the unconscionability argument.

## **CONCLUSION**

For the reasons stated above, Jackson respectfully requests that this Court dismiss this appeal for lack of appellate jurisdiction. In the alternative, Jackson respectfully requests that this Court affirm the District Court's Order denying Amazon's Motion to Compel Arbitration.

Dated: June 29, 2022

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _/s/ Max S. Roberts_
       Max S. Roberts

Joshua D. Arisohn
Max S. Roberts
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
E-Mail: jarisohn@bursor.com
           mroberts@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
Neal J. Deckant (SBN 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
E-Mail: ltfisher@bursor.com
           ndeckant@bursor.com

*Attorneys for Plaintiff-Appellee*

## STATEMENT OF RELATED CASES

Plaintiff-Appellee is not aware of any related cases pending in this Court.

Dated:  June 29, 2022                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Max S. Roberts*
                    Max S. Roberts

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8.  Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** <u>21-56107</u>

I am the attorney or self-represented party.

**This brief contains 13, 965 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

**[X]** complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** *<u>/s/ Max S. Roberts</u>*    **Date:** <u>June 29, 2022</u>

**This Page Intentionally Left Blank**

# STATUTORY ADDENDUM

**Statutes**

28 U.S.C. § 1292(a)(1) ……………………………………………………… 1

9 U.S.C. § 16……………………………………………………………… 1

Cal. Civil Code § 1589 …………………………………………………… 1

Cal. Civil Code § 1641 …………………………………………………… 1

Cal. Civil Code § 1648 …………………………………………………… 1

Cal. Civil Code § 1654 …………………………………………………… 2

**28 U.S.C. § 1292(a)(1)**

Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

> Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

**9 U.S.C. § 16(a)(1)**

An appeal may be taken from—

> an order—
>
>> (A) refusing a stay of any action under section 3 of this title,
>>
>> (B) denying a petition under section 4 of this title to order arbitration to proceed,

**Cal. Civ. Code § 1589**

A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting.

**Cal. Civ. Code § 1641**

The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.

**Cal. Civ. Code § 1648**

However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract.

**Cal. Civil Code § 1654**

In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.