No. 21-56107

# In the United States Court of Appeals

## FOR THE NINTH CIRCUIT

DRICKEY JACKSON, individually and on behalf of all
others similarly situated,

*Plaintiff-Appellee*,

v.

AMAZON.COM, INC.,

*Defendant-Appellant*.

On Appeal from the U.S. District Court for the Southern District of California
No. 3:20-cv-02365 (Hon. William Q. Hayes)

# REPLY BRIEF OF AMAZON.COM, INC.

JOSEPH DUFFY
BRIANNA R. HOWARD
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071
(213) 612-2500
joseph.duffy@morganlewis.com
brianna.howard@morganlewis.com

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000
michael.kenneally@morganlewis.com

CATHERINE ESCHBACH
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
(713) 890-5000
catherine.eschbach@morganlewis.com

*Counsel for Defendant-Appellant*
*Amazon.com, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... ii

INTRODUCTION ..........................................................................................1

ARGUMENT ..................................................................................................3

I.     The Court has appellate jurisdiction over the District Court's order. .............3

     A.     The Court has jurisdiction under 9 U.S.C. § 16(a)(1)...........................3

     B.     The Court has jurisdiction under 28 U.S.C. § 1292(a)(1)....................8

II.     Plaintiff's attempt to escape 2019 TOS is speculative and meritless...........13

III.     Plaintiff cannot narrow the plain meaning of the arbitration provision in the 2016 TOS..............................................................................................20

CONCLUSION ..............................................................................................26

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS ..............................28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbaugh v. Y&H Corp.*,
    546 U.S. 500 (2006)...................................................................................8

*Ariz. Edison Co. v. S. Sierras Power Co.*,
    17 F.2d 739 (9th Cir. 1927) .....................................................................9

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009)........................................................................5, 6, 7, 8

*BP P.L.C. v. Mayor of Baltimore*,
    141 S. Ct. 1532 (2021)......................................................................6, 7, 8

*Briggs & Stratton Corp. v. Loc. 232, Int'l Union, Allied Indus. Workers of Am. (AFL-CIO)*,
    36 F.3d 712 (7th Cir. 1994) ...................................................................12

*Brinkley v. Monterey Fin. Servs., Inc.*,
    242 Cal. App. 4th 314 (2015) ................................................................24

*Carmona v. Domino's Pizza, LLC*,
    21 F.4th 627 (9th Cir. 2021) ...................................................................7

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981)..................................................................................9

*Charles v. Portfolio Recovery Assocs., LLC*,
    No. 17-cv-955, 2018 WL 5660747 (D. Or. Aug. 1, 2018).........................15, 16

*Cox v. Ocean View Hotel Corp.*,
    533 F.3d 1114 (9th Cir. 2008) ...............................................................9

*Craft v. Campbell Soup Co.*,
    177 F.3d 1083 (9th Cir. 1998) ...............................................................7

*Douglas v. U.S. Dist. Ct. for Cent. Dist. of Cal.*,
    495 F.3d 1062 (9th Cir. 2007) .............................................................18

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Dufour v. Allen*,
748 F. App'x 150 (9th Cir. 2019) ....................................................21

*EFund Cap. Partners v. Pless*,
150 Cal. App. 4th 1311 (2007) .......................................................22

*Elias v. Superior Ct.*,
No. G050404, 2015 WL 1455910 (Cal. Ct. App. Mar. 30, 2015) ....................26

*Engalla v. Permanente Med. Grp., Inc.*,
938 P.2d 903 (Cal. 1997) ..............................................................21

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018)..................................................................11

*Gibbs v. Stinson*,
421 F. Supp. 3d 267 (E.D. Va. 2019) ..............................................16

*Green Tree Fin. Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000)......................................................................12

*Hamrick v. Partsfleet, LLC*,
1 F.4th 1337 (11th Cir. 2021) ..........................................................8

*Hartford Cas. Ins. Co. v. Travelers Indem. Co.*,
110 Cal. App. 4th 710 (2003) .......................................................22

*Howard v. Goldbloom*,
30 Cal. App. 5th 659 (2018) .........................................................25

*In re Universal Serv. Fund Tel. Billing Prac. Litig. v. Sprint Commc'ns Co. L.P.*,
428 F.3d 940 (10th Cir. 2005) .......................................................11

*Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Aloha Airlines, Inc.*,
776 F.2d 812 (9th Cir. 1985) ..................................................1, 9, 10

*Int'l Bhd. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*,
702 F.3d 954 (7th Cir. 2012) ..........................................................8

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Kan. Gas & Elec. Co. v. Westinghouse Elec. Corp.*,
    861 F.2d 420 (4th Cir. 1988) ..............................................................10

*Knutson v. Sirius XM Radio Inc.*,
    771 F.3d 559 (9th Cir. 2014) ..............................................................17

*Kum Tat Ltd. v. Linden Ox Pasture, LLC*,
    845 F.3d 979 (9th Cir. 2017) ............................................................4, 5

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019) ......................................................................21

*Larian v. Larian*,
    123 Cal. App. 4th 751 (2004) ............................................................16

*Marsch v. Williams*,
    23 Cal. App. 4th 250 (1994) ..............................................................26

*Meza v. Andersen Distrib., Inc.*,
    No. 21-cv-1320, 2022 WL 2189612 (C.D. Cal. Feb. 2, 2022) ...........17

*Mostowfi v. I2 Telecom Int'l, Inc.*,
    No. 03-cv-5784, 2004 WL 7338797 (N.D. Cal. May 27, 2004) ........26

*Nordin v. Nutri/System, Inc.*,
    897 F.2d 339 (8th Cir. 1990) ..............................................................10

*Oliveira v. New Prime, Inc.*,
    857 F.3d 7 (1st Cir. 2017) ....................................................................8

*Oxy-Health LLC v. H2 Enters., Inc.*,
    812 F. App'x 660 (9th Cir. 2020) ......................................................25

*Palcko v. Airborne Express, Inc.*,
    372 F.3d 588 (3d Cir. 2004) ................................................................5

*QED Holdings, LLC v. Block*,
    No. 15-cv-2390, 2015 WL 12659935 (C.D. Cal. June 11, 2015) ......25

iv

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Ratha v. Phatthana Seafood Co.*,
  35 F.4th 1159 (9th Cir. 2022) ............................................................. 14

*Revitch v. DIRECTV, LLC*,
  977 F.3d 713 (9th Cir. 2020) ............................................................... 25

*Rice v. Downs*,
  248 Cal. App. 4th 175 (2016) ........................................................ 21, 26

*Rittmann v. Amazon.com, Inc.*,
  971 F.3d 904 (9th Cir. 2020) ..................................................... *passim*

*Rosenthal v. Great W. Fin. Sec. Corp.*,
  926 P.2d 1061 (Cal. 1996) ..................................................................... 9

*Sandquist v. Lebo Auto., Inc.*,
  376 P.3d 506 (Cal. 2016) .............................................................. 20, 21

*Schnabel v. Trilegiant Corp.*,
  697 F.3d 110 (2d Cir. 2012) ................................................................ 17

*Sierra Forest Legacy v. Sherman*,
  646 F.3d 1161 (9th Cir. 2011) ............................................................ 10

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) .............................................................. 26

*Sprunk v. Prisma LLC*,
  14 Cal. App. 5th 785 (2017) ................................................................ 17

*Starke v. SquareTrade, Inc.*,
  913 F.3d 279 (2d Cir. 2019) ................................................................ 17

*Stover v. Experian Holdings, Inc.*,
  978 F.3d 1082 (9th Cir. 2020) ............................................................ 18

*Sw. Airlines Co. v. Saxon*,
  142 S. Ct. 1783 (2022) .......................................................................... 4

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Vasquez v. Rackauckas*,
  734 F.3d 1025 (9th Cir. 2013) ............................................................9

*Viking River Cruises, Inc. v. Moriana*,
  142 S. Ct. 1906 (2022) ......................................................................23

*Wagner Constr. Co. v. Pac. Mech. Corp.*,
  157 P.3d 1029 (Cal. 2007) .............................................................21, 22

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
  516 U.S. 199 (1996) ............................................................................6

**Statutes**

9 U.S.C.
  § 1 ..................................................................................................3, 12
  § 3 ...............................................................................................3, 4, 6
  § 4 ...................................................................................................3, 4
  § 16 ..............................................................................................*passim*

28 U.S.C. § 1292 ...................................................................................*passim*

**Other Authorities**

16 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE
  § 3923 (3d ed. 2022) ...........................................................................12

## INTRODUCTION

Plaintiff advances three main arguments to defend the district court's ruling—none of which tracks the district court's own reasoning. All three are meritless.

*First*, Plaintiff challenges this Court's jurisdiction to even hear the appeal. This challenge fails for two separate reasons. The Court has appellate jurisdiction under 9 U.S.C. § 16(a)(1)(A) and (B) because the district court refused to compel arbitration and stay the litigation under the FAA. Plaintiff dismisses this basis for jurisdiction because when Amazon filed its motion and the district court denied it, Ninth Circuit precedent held Amazon Flex drivers exempt from the FAA. But that is irrelevant, because jurisdiction under Section 16(a)(1)(A) and (B) does not hinge on whether the appellant is entitled to compel arbitration under the FAA. What matters is that Amazon invoked the FAA and the district court denied the motion. That secures appellate jurisdiction, as this Court's own cases attest. Separately, this Court has squarely held that a denial of a motion to compel arbitration is immediately appealable under 28 U.S.C. § 1292(a)(1). *See Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Aloha Airlines, Inc.*, 776 F.2d 812, 814–15 (9th Cir. 1985). Plaintiff asks this Court to disregard this precedent, but it remains binding law.

*Second*, Plaintiff argues that the 2019 TOS is inapplicable because a party relying on an emailed contractual update must enter a copy of the email into evidence to show assent to the new terms. But the district court rejected that categorical rule.

1

It merely held that Amazon had to show Plaintiff had individualized notice of the agreement's existence and contents. ER-71. Amazon's evidence showed that, and Plaintiff submitted no evidence to the contrary. The district court was therefore wrong not to enforce the 2019 TOS. And because the 2019 TOS delegates the arbitrability disputes that Plaintiff has raised to the arbitrator, the case should end here: Plaintiff must pursue his arbitrability challenges, and ultimately his substantive claims, in individual arbitration.

*Third*, Plaintiff tries to salvage the idea that this case falls outside the scope of the 2016 TOS using the principle, which the district court never mentioned, that contract ambiguities are construed against the drafter. But Plaintiff's authority on this principle shows that it does not displace California's longstanding requirement to resolve all doubts in favor arbitration. Under California's pro-arbitration presumption, any ambiguity here requires arbitration, not the opposite. In all events, the 2016 arbitration provision is not ambiguous just because it is broad, and this broad provision easily covers this case. The complaint makes many allegations about Amazon Flex deliveries and participating in the Amazon Flex program. And the complaint details how Plaintiff's use of the Facebook groups and thus this dispute arise from and relate to his Amazon Flex experiences. Plaintiff promised to arbitrate disputes relating in any way to the Amazon Flex program and his experience with it. The Court should hold him to that promise.

## ARGUMENT

**I.    The Court has appellate jurisdiction over the District Court's order.**

Plaintiff hopes to duck the merits of this appeal by challenging appellate jurisdiction.  As Amazon detailed in its opposition to Plaintiff's motion to dismiss the appeal, Dkt. 20, this Court has jurisdiction for two independent reasons.

### A.    The Court has jurisdiction under 9 U.S.C. § 16(a)(1).

The FAA creates appellate jurisdiction over "an order . . . refusing a stay of any action under [9 U.S.C. § 3]" or "denying a petition under [9 U.S.C. § 4] to order arbitration to proceed."  9 U.S.C. § 16(a)(1)(A)–(B).  By its plain terms, this provision creates jurisdiction here.

The district court's order noted that "Amazon move[d] to compel arbitration of Plaintiff's claims on an individual basis pursuant to the Federal Arbitration Act ('FAA'), 9 U.S.C. §§ 1, *et seq.*, or Delaware law" and "move[d] to stay or dismiss" the action.  ER-63.  And the order denied this motion in full, declining to compel arbitration and enter a stay pending arbitration under either the FAA or state law.  *See* ER-80.  The district court expressly agreed with Plaintiff, in fact, that under then-controlling Ninth Circuit precedent, "Plaintiff is an Amazon Flex driver 'exempt from the FAA's coverage provisions.'"  ER-73 (quoting *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 919 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1374 (2021)); *see* 9 U.S.C. § 1 (exempting "contracts of employment of seamen, railroad

employees, or any other class of workers engaged in foreign or interstate com-
merce"). On its face, then, the district court's order refused to enter a stay under
Section 3 of the FAA and denied a petition to compel arbitration under Section 4.
The order thus triggers jurisdiction under both Section 16(a)(1)(A) and (B).

Plaintiff resists this conclusion by mischaracterizing the district court's order
and Amazon's motion. He asserts that the motion "was not and could not have been
brought pursuant to the FAA." Jackson Br. 12. But that ignores that the district
court expressly found that it was, ER-63, and that his own opposition devoted two
pages to arguing that *Rittmann* prevented Amazon from using the FAA to compel
arbitration, ER-105, ER-112–13. Plaintiff also asserts that the motion "was denied
under California law, not the FAA." Jackson Br. 14. But that ignores that the district
court expressly applied *Rittmann*'s FAA holding in denying the motion. ER-73.[1]

This case therefore bears no resemblance to *Kum Tat Ltd. v. Linden Ox Pas-
ture, LLC*, 845 F.3d 979 (9th Cir. 2017), which Plaintiff cites. There, the "motion

---

[1] Plaintiff also misdescribes *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783
(2022), which clarified the FAA's transportation worker exemption but did not
remotely "affirm[]" *Rittmann*'s reasoning, as Plaintiff claims. Jackson Br. 12.
*Saxon* recognized that local delivery drivers are "further removed" from interstate
commerce than *Rittmann* suggests. *See Saxon*, 142 S. Ct. at 1789 n.2 (citation
omitted). And *Saxon*'s new framework undercuts *Rittmann* in several ways. But
because this Court's jurisdiction and the enforceability of Plaintiff's arbitration
agreement do not depend on whether his agreements are exempt from the FAA,
this Court need not address *Saxon*'s implications here. Nor should the Court do
so, because the parties have not had a chance to develop the arguments and evi-
dence to answer that question in response to *Saxon*'s guidance.

expressly urged application **only** of California arbitration law and contained no citation to the FAA," and the movant "disclaimed" any application of the FAA. *Id.* at 982–83 (emphasis added). Amazon, in contrast, cited the FAA on the first page of its motion and contended that the FAA supports arbitration, while recognizing that *Rittmann* was binding on the district court at the time. ER-137–38. The district court's order recognizes that Amazon invoked the FAA, ER-63, and so under *Kum Tat*, this Court's jurisdiction is "crystal clear," 845 F.3d at 983 (citation omitted).

Plaintiff separately argues that Section 16(a)(1) creates no jurisdiction when the arbitration agreement falls within the FAA's transportation worker exemption. But the only appellate court to face that argument head-on has seen it is "without merit." *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 591 (3d Cir. 2004). The argument "contradicts section 16(a)'s plain language," *id.* at 592, which turns on the nature of the order being appealed, not whether the appellant can successfully use the FAA to enforce the arbitration agreement. The argument also improperly makes jurisdiction "contingent on the outcome of [the appellate court's] review of the merits of the District Court's finding on the exemption question." *Id.*

Supreme Court precedent compels the same conclusion. In *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 628 (2009), the Court explained that Section 16(a)(1) jurisdiction hinges "upon the category of order appealed from, rather than upon the strength of the grounds for reversing the order." Indeed, the statute "unambiguously

5

makes the underlying merits irrelevant, for even utter frivolousness of the underlying request for a § 3 stay cannot turn a denial into something other than '[a]n order . . . refusing a stay of any action under section 3.'" *Id.* at 628–29 (quoting 9 U.S.C. § 16(a)). Although *Arthur Andersen* did not implicate the FAA's exemption, the same reasoning applies: *Rittmann* does not change the fact that the district court's order denied arbitration under the FAA. That is all Section 16 demands, and Plaintiff's contrary view "conflat[es] the jurisdictional question with the merits." *Id.* at 628.

As a fallback, Plaintiff suggests that while the Court has jurisdiction, it is limited to the issue of whether the FAA requires enforcing his agreement. *See* Jackson Br. 15–17. But the Supreme Court has consistently held that when a statute creates interlocutory appellate jurisdiction over an "order," jurisdiction extends to "any issue fairly included within" that order. *BP P.L.C. v. Mayor of Baltimore*, 141 S. Ct. 1532, 1540 (2021) (citation omitted); *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996). In *BP*, for instance, the statute created jurisdiction over remand orders in cases removed from state court under two specific statutes. 141 S. Ct. at 1537. The plaintiffs argued that the appellate court could entertain only the district court's reasons for denying removal under those two statutes, and not the defendants' other grounds for removal. The Supreme Court disagreed: "when a district court's removal order rejects all of the defendants' grounds for removal, [the

statute] authorizes a court of appeals to review each and every one of them." *Id.* at 1538. The same principle applies here and creates appellate jurisdiction over all issues within the district court's order.

And ever since *Arthur Andersen*, this Court has followed this approach. In *Rittmann*, for example, the Court did not dismiss the appeal after holding that the exemption applied. It recognized that Section 16(a)(1)(B) created jurisdiction. *Rittmann*, 971 F.3d at 909. Then, after finding the exemption applicable, it separately reviewed the non-FAA aspects of the trial court's order, which denied enforcement of the agreement under state law. *Id.* at 919–21. The result was affirmance of that order, not dismissal of the appeal. *Id.* at 921; *see also Carmona v. Domino's Pizza, LLC*, 21 F.4th 627, 629 (9th Cir. 2021) (exercising jurisdiction under Section 16(a)(1)(B) even though both the district and appellate courts found the FAA exemption applicable).

Plaintiff's cited authorities do not justify a different result. Under the Supreme Court's holdings in *Arthur Andersen* and *BP*, jurisdiction here turns on whether the district court's order falls within the Section 16(a)(1)(A) and (B) categories; if so, jurisdiction extends to all issues within that order. When this Court dismissed the appeal for lack of jurisdiction after finding that the FAA exemption applied in *Craft v. Campbell Soup Co.*, 177 F.3d 1083, 1085 (9th Cir. 1998) (per curiam), *abrogated on other grounds by Cir. City Stores, Inc. v. Adams*, 532 U.S.

105 (2001), it conflated jurisdiction with the merits in violation of *Arthur Andersen*. The same is true of the First and Seventh Circuit rulings in *Oliveira v. New Prime, Inc.*, 857 F.3d 7, 24 (1st Cir. 2017), *aff'd on other grounds*, 139 S. Ct. 532 (2019), and *International Brotherhood of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*, 702 F.3d 954, 956 (7th Cir. 2012).[2] And it is a mistake to resort to "pendent appellate jurisdiction," as the appellant wrongly asked the Eleventh Circuit to do in *Hamrick v. Partsfleet, LLC*, 1 F.4th 1337, 1352 (11th Cir. 2021). That concept does not apply when a statute's express grant of jurisdiction extends to specific categories of orders and thus encompasses "the whole of [the] 'order,' not just some of its parts or pieces." *BP*, 141 S. Ct. at 1538. The district court's order qualifies under Section 16(a)(1), so jurisdiction over this appeal is secure.

### B. The Court has jurisdiction under 28 U.S.C. § 1292(a)(1).

Wholly apart from the FAA, Section 1292(a)(1) authorizes appeals from "[i]nterlocutory orders . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1).

---

[2]   In addition, these rulings "should be accorded 'no precedential effect'" because they are examples of "drive-by jurisdictional rulings." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006) (citation omitted). Such rulings "obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure" on the merits. *Id.* (citation omitted). For example, none of these cases grapples with the reasoning that underlies *Arthur Andersen* or the implications of treating the exemption as a limitation on jurisdiction.

This Court has held that a "denial of [a] motion to compel arbitration" is appealable under this provision. *Aloha Airlines*, 776 F.2d at 815. Section 1292(a)(1) creates jurisdiction when the order "had the effect of refusing an injunction," "might have 'serious, perhaps irreparable consequence[s],'" and "can be 'effectually challenged' only by immediate appeal." *Id.* at 814 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981)). These three requirements are met because refusing to order Plaintiff to arbitrate denies Amazon "the opportunity to arbitrate the dispute," which is "a decision with serious consequences that can only be challenged by immediate appeal." *Id.* at 815.

That conclusion also follows from Section 1292(a)(1)'s plain language. To deny a motion to compel arbitration is to deny interlocutory injunctive relief. A motion to compel arbitration effectively seeks "to compel specific performance of [the] contract." *E.g.*, *Rosenthal v. Great W. Fin. Sec. Corp.*, 926 P.2d 1061, 1070 (Cal. 1996) (citations omitted); *see also, e.g.*, *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1125 (9th Cir. 2008) ("[A]n action to compel arbitration is in essence a suit in equity to compel specific performance of the arbitration agreement." (citation and brackets omitted)). And "a claim for specific performance of a contract . . . is, essentially, an injunction." *Vasquez v. Rackauckas*, 734 F.3d 1025, 1040 (9th Cir. 2013); *see also Ariz. Edison Co. v. S. Sierras Power Co.*, 17 F.2d 739, 740 (9th Cir. 1927) ("To enjoin the breach of a contract is, in effect, to decree its specific

performance, and the principles applicable to the two remedies are the same."). Amazon's motion contended that Plaintiff had breached his contractual promise to arbitrate this dispute and asked the district court to order Plaintiff to fulfill that promise. *See* ER-137–38. The district court's order "refus[ed]" this requested relief, so an appeal lies under Section 1292(a)(1).

Plaintiff admits that this Court has already held that Section 1292(a)(1) creates jurisdiction over the type of order at issue here. Jackson Br. 19–20. That should end the debate, because "[o]ne three-judge panel of this court cannot reconsider or overrule the decision of a prior panel." *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1189 (9th Cir. 2011) (citation omitted). Plaintiff cannot get traction from other circuits' rulings. *See* Jackson Br. 18–19. This Court was correct to recognize, as the Fourth and Eighth Circuits have also recognized, that orders denying motions to compel arbitration are immediately appealable under Section 1292(a)(1). *See, e.g.*, *Kan. Gas & Elec. Co. v. Westinghouse Elec. Corp.*, 861 F.2d 420, 422 (4th Cir. 1988) (adopting the same reasoning as *Aloha Airlines*); *Nordin v. Nutri/System, Inc.*, 897 F.2d 339, 342 (8th Cir. 1990) (same).

With Ninth Circuit precedent squarely against him, Plaintiff spins a complicated theory that the passage of FAA Section 16 in 1988 somehow abrogates *Aloha Airlines*'s interpretation of Section 1292(a)(1). Jackson Br. 20–21. Because Section 16 addresses arbitration orders, the theory goes, a litigant cannot invoke other

10

sources of jurisdiction if Section 16 does not authorize appeal. This argument is academic, though, because Section 16 does authorize this appeal. *See supra* Section I.A.

But Plaintiff's theory fails even on its own terms. His only support is a conclusory and unpersuasive footnote in an abrogated out-of-circuit opinion. *See In re Universal Serv. Fund Tel. Billing Prac. Litig. v. Sprint Commc'ns Co. L.P.*, 428 F.3d 940, 944 n.4 (10th Cir. 2005), *abrogated on other grounds by Arthur Andersen*, 556 U.S. 624. Plaintiff's theory is that the passage of Section 16 impliedly repeals Section 1292(a)(1) to the extent that the latter statute already authorized appeals from denials of motions to compel arbitration.

A repeal by implication, however, requires "a clearly expressed congressional intention." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (citation omitted). There is no such expression of intent here. Nothing in Section 16 restricts any preexisting source of appellate jurisdiction over denials of motions to compel arbitration. In contrast, Section 16(b) **does** restrict certain appeals of interlocutory orders that are **favorable** to arbitration. That express restriction proves that Congress would have included express language to restrict any other existing sources of jurisdiction to appeal arbitration rulings. But Congress did not intend to restrict existing sources of jurisdiction over orders hostile to arbitration. Its goal was to "generally **permit[]** immediate appeal of orders hostile to arbitration" and to

11

"bar[] appeal of interlocutory orders favorable to arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 86 (2000) (emphasis added). Congress's expansion of jurisdiction over anti-arbitration rulings in Section 16(a)(1) did not impliedly repeal the part of Section 1292(a)(1) that authorized such appeals.

Plaintiff's theory is particularly far-fetched given his belief that the order here is outside the scope of Section 16 to start with. None of Plaintiff's citations remotely support the view that Section 16(a)(1) overrides Section 1292(a)(1) for an agreement that (according to Plaintiff) is exempt from the FAA. On the contrary, one of his cases says the opposite: if "agreements are indeed excluded by [9 U.S.C.] § 1, then courts must continue to wrestle . . . with questions of appellate jurisdiction under § 1292." *Briggs & Stratton Corp. v. Loc. 232, Int'l Union, Allied Indus. Workers of Am. (AFL-CIO)*, 36 F.3d 712, 714–15 (7th Cir. 1994). Even if the Tenth Circuit were right to think in *Universal Service Fund* that Section 16(a)(1) is the exclusive source of jurisdiction for FAA-governed arbitration agreements, there is no colorable argument that it is the exclusive source of jurisdiction for purportedly non-FAA agreements.

\* \* \*

As a leading treatise observes, "[t]here is no reason to have different rules of appeal" in arbitration cases simply because an agreement is purportedly subject to state law rather than the FAA. 16 Charles Alan Wright et al., Federal

12

PRACTICE AND PROCEDURE § 3923 (3d ed. 2022). Nor would such an approach comply with Supreme Court and Ninth Circuit precedent or the relevant statutory language. This Court has jurisdiction under both Section 16(a)(1) and Section 1292(a)(1).

## II. Plaintiff's attempt to escape 2019 TOS is speculative and meritless.

As for the substantive issues on appeal, Plaintiff first tries to defend the district court's refusal to apply the 2019 TOS through an unsupported rationale that the district court did not adopt. When a party seeks to enforce an update to an existing contract, Plaintiff insists, the party must "present the actual e-mail" notifying users of the update, so the court can assess its "design and content." Jackson Br. 25.

The district court, however, recognized that there is no per se rule requiring introduction of the email into evidence. *See* ER-15 ("None of these cases indicate that the Court has to see the email, the email has to be attached by way of a declaration or attached by way of—or in the record actually."). Its holding, instead, was that the record supposedly did not show that Amazon gave "Plaintiff individualized notice of the 'agreement's existence and contents.'" ER-71 (citation omitted). Plaintiff cannot defend that conclusion and does not really try.

The uncontroverted evidence is that "Amazon sent the 2019 TOS to Plaintiff via email on October 3, 2019" using the email address that Plaintiff gave Amazon for such communications. ER-170 (¶¶ 13–14). Plaintiff asserts that this evidence

"does not show that it notified Jackson of the 2019 TOS." Jackson Br. 24. But it does. When someone provides a personal email address for the very purpose of receiving communications about a contractual relationship, *see* ER-180 (2016 TOS § 14), emailing a new version of the parties' agreement to that address is an excellent way of providing individualized notice that there is a new version of the agreement. That is particularly true when the agreement prominently states, in its second paragraph, "**This Agreement updates and replaces any version of the Terms of Service you previously accepted.**" ER-189 (2019 TOS). The 2019 TOS then explains that if the Amazon Flex driver "accepted a prior version of the Terms of Service," the 2019 version takes effect if the driver "provide[s] Services." *Id.* The record shows that Amazon provided individualized notice of the updated agreement's existence and contents.

Plaintiff tries to claim otherwise by admittedly "speculating," through counsel's imaginings, that the email may have been written in some way that fails to give a reasonable user inquiry notice of the new agreement. Jackson Br. 27 (quoting ER-38). The district court also seemed to indulge in speculation, at least at oral argument, that the email may have been "blank" with "no information on it." *Id.* at 26 (quoting ER-14). But fact finders may "draw only those inferences of which the evidence is reasonably susceptible" and "may not resort to speculation." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1180 (9th Cir. 2022) (citation omitted).

14

Plaintiff cannot overcome the fair implications of Amazon's evidence through bare speculation.

Plaintiff's speculation is especially inappropriate when he had complete access to his email account and could have easily submitted a declaration: (a) if he found no record of the email; (b) if he found the email but thought its design or content was objectionable; (c) if he lacked actual knowledge of the 2019 TOS; or (d) even if he simply could not recall accepting the 2019 TOS (as plaintiffs often attest in opposing arbitration). He did not introduce evidence of any of those things, or anything else. Nor does he dispute that through the 2016 TOS, which he concededly accepted, he agreed to be "responsible for printing, storing, and maintaining [his] own records of any such agreements, notices, disclosures or other communications" that he received at the email address he provided. ER-180 (2016 TOS § 14). If he had offered any such evidence, Amazon then could have found it worthwhile to submit rebuttal evidence on reply. But when Plaintiff did nothing to create a dispute of fact over Amazon's evidence, Amazon had no reason to introduce additional reply evidence. Plaintiff has never cited **any case** recognizing that Amazon's initial burden required introduction of the email in these circumstances.

On the contrary, the cases that Amazon cited (and that Plaintiff continues to ignore) found ample evidence of notice of an update to an agreement on far thinner records than exists here. *See* Amazon Br. 22–24 (discussing *Charles v. Portfolio*

15

*Recovery Assocs., LLC*, No. 17-cv-955, 2018 WL 5660747, at *6–7 (D. Or. Aug. 1, 2018), *report and recommendation adopted*, No. 17-cv-955, 2019 WL 722561 (D. Or. Feb. 20, 2019), and *Gibbs v. Stinson*, 421 F. Supp. 3d 267, 302 & n.55 (E.D. Va. 2019)). These cases make the commonsense observation that if the opposing party finds the movant's evidence of notice inadequate, the opposing party can submit counterevidence to call it into doubt. *See, e.g.*, *Charles*, 2018 WL 5660747, at *7 (explaining that when the moving party provides uncontradicted evidence that the opposing party received the new agreement, "attorney argument" and "[m]erely claiming a failure of proof" are not enough); *Gibbs*, 421 F. Supp. 3d at 302 n.55 (determining that even though the defendants' declaration "d[id] not show the specific emails sent to Plaintiffs," the updated version of the agreement applied "because Plaintiffs d[id] not dispute the [defendants'] Declaration's validity or proffer evidence showing they did not receive or accept the 2018 [terms]").

Plaintiff seemingly cites *Larian v. Larian*, 123 Cal. App. 4th 751, 760 (2004), to portray California law as inconsistent with that approach. But *Larian* does not address the scope of the moving party's initial burden under California law. It merely recites the basic principle that a party trying to compel arbitration must prove the existence of an arbitration agreement. *Id.* The California decisions that define the nature of the moving party's initial burden, on the other hand, confirm that it is not a heavy one. Under California law, "unless there is a dispute over authenticity,

it is sufficient for a party moving to compel arbitration to recite the terms of the governing provision." *Sprunk v. Prisma LLC*, 14 Cal. App. 5th 785, 793 (2017); *see also, e.g.*, *Meza v. Andersen Distrib., Inc.*, No. 21-cv-1320, 2022 WL 2189612, at *2 (C.D. Cal. Feb. 2, 2022) (explaining that under California law, "[a] copy of the arbitration agreement or a recitation of its terms in the motion is sufficient to establish the existence of an arbitration agreement"). A party can carry its initial burden, for example, merely "by providing . . . two different versions of [an] arbitration provision and stating that all class members signed at least one of those versions." *Sprunk*, 14 Cal. App. 5th at 793. To require more of the moving party, the opposing party must "challenge the truth of [the movant's] claim" rather than "merely contest[] the sufficiency of [the movant's] preliminary evidentiary showing." *Id.* at 794. Under this framework, Amazon easily carried its initial burden. And Plaintiff cannot overcome Amazon's evidence without even denying the truth of Amazon's claims.

Plaintiff is left to rely on various off point cases. For example, he cites several decisions addressing "terms-later" contracting. These cases involve consumers who enroll in a service or purchase a product from a seller who later sends previously undisclosed terms that the consumer must then take affirmative action, within a set time, to reject. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 121–29 (2d Cir. 2012); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565–69 (9th Cir. 2014); *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 292–95 (2d Cir. 2019). Plaintiff also

invokes decisions on the degree of notice required for a mere website visit to bind a consumer to the website creator's terms. *Douglas v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 495 F.3d 1062, 1066–68 (9th Cir. 2007) (per curiam); *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1085–86 (9th Cir. 2020).

Unlike the consumers in these cases, however, Plaintiff was in an ongoing independent contractor relationship to perform services for Amazon and still bound by highly relevant contractual promises. His existing contract obligated him to regularly review the TOS through the Amazon Flex app or other channels if he wanted to continue performing services in exchange for compensation. ER-179–80 (2016 TOS §§ 13–15). Given his prior promises, Plaintiff objectively manifested agreement to the then-applicable terms when he signed up for and performed specific delivery blocks more than five months after the 2019 TOS update. ER-179 (2016 TOS § 13); ER-170 (¶ 14); *see also* ER-174–75 (2016 TOS §§ 1–3) (describing the process of accepting and performing Amazon Flex delivery blocks as an independent contractor in exchange for agreed-upon fees).

A reasonable person in Plaintiff's position would have had ample actual or inquiry notice about the 2019 TOS. Plaintiff cannot create an issue of fact merely by speculating that maybe the notice was not good enough.

\*　　\*　　\*

Because the 2019 TOS applies, Plaintiff must arbitrate and no further consideration of Plaintiff's arbitrability challenges is appropriate. He does not deny that the 2019 TOS has an applicable delegation provision assigning all disputes over arbitrability to the arbitrator. *See* Amazon Br. 28. Instead, he argues that Amazon forfeited reliance on the delegation provision by "not discuss[ing] delegation until its reply" brief below. Jackson Br. 37. This claim is just false. Amazon's moving brief argued:

> [I]f there were any dispute about the scope of the arbitration agreement, it would have to be settled by the arbitrator rather than the Court. Through the 2019 TOS, Plaintiff agreed to arbitrate any disputes over whether claims are arbitrable.

ER-144; *see also* ER-145 (identifying the 2019 TOS provisions that agreed to arbitrate arbitrability and citing applicable precedent). What's more, Plaintiff understood Amazon's argument and tried to counter it in his opposition. ER-110–11. Amazon's reply brief then responded to the opposition's claims. ER-89–91. Amazon fully preserved its reliance on the 2019 TOS's delegation provision. Because the 2019 TOS applies, there is nothing left for this Court or the district court to decide about whether Plaintiff must arbitrate his claims.[3]

---

[3] Amazon explained below that the 2019 TOS also assigns any disputes over choice-of-law (Delaware versus California) and unconscionability to the arbitrator. ER-89–91; ER-149. So Plaintiff is wrong to argue that the district court must resolve these disputes if the 2019 TOS governs. Jackson Br. 54. The district court could properly entertain Plaintiff's unconscionability arguments only if the

**III. Plaintiff cannot narrow the plain meaning of the arbitration provision in the 2016 TOS.**

Plaintiff also proposes different grounds for the district court's conclusion about the 2016 TOS. Relying on *Sandquist v. Lebo Automotive, Inc.*, 376 P.3d 506 (Cal. 2016), which his opposition below never even cited, *see* ER-97–128, Plaintiff insists that the arbitration provision in the 2016 TOS is ambiguous and must be construed against Amazon. Jackson Br. 39–40, 49–50. But if anything, *Sandquist* supports Amazon, not Plaintiff. It reaffirms California's adherence to the presumption of arbitrability. And in any event, the arbitration provision in the 2016 TOS is not ambiguous. By its plain terms, it applies to the claims and dispute here.

First, *Sandquist* rested on two "long-established interpretive principles," not just the one Plaintiff discusses. 376 P.3d at 513. The issue in *Sandquist* was whether the parties had agreed to arbitrate absent class members' claims, and the California Supreme Court began with the well-settled principle that supports Amazon here: "when the allocation of a matter to arbitration or the courts is uncertain, we resolve all doubts in favor of arbitration." *Id.* "All else being equal, this presumption tips the scales in favor of" arbitration. *Id.* at 514.

Plaintiff thus mischaracterizes *Sandquist* in suggesting that its discussion of construing ambiguities against the drafter overrides the presumption of arbitrability.

---

2016 TOS governs—although for the reasons Amazon explained in the court below, Plaintiff's unconscionability challenge is meritless. ER-93–96; ER-151.

He even suggests that *Sandquist* overrules a slew of precedent, including cases that *Sandquist* expressly relied on. *Compare* Jackson Br. 40 n.5 (claiming that *Sandquist* overrules, among other cases, *Engalla v. Permanente Medical Group, Inc.*, 938 P.2d 903, 915 (Cal. 1997), and *Wagner Construction Co. v. Pacific Mechanical Corp.*, 157 P.3d 1029, 1032 (Cal. 2007)), *with Sandquist*, 376 P.3d at 514 (citing *Engalla* and *Wagner Construction* as support for the presumption of arbitrability). In *Sandquist*, the California Supreme Court found that the principle of construing ambiguities against drafters reinforced the presumption of arbitrability because, there, both principles pointed the same way. 376 P.3d at 514. Whenever it is possible to read an arbitration provision as requiring arbitration, however, California's presumption of arbitration requires courts to do so. *See, e.g.*, *Rice v. Downs*, 248 Cal. App. 4th 175, 185 (2016) ("[A]rbitration should be upheld 'unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute.'" (citation omitted)).[4]

---

[4] *Sandquist*'s approach to the specific topic of classwide arbitration is no longer good law. *See, e.g.*, *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1419 (2019) ("Courts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis."). But the key point here is that the presumption in favor of arbitrability remains alive and well in California. Plaintiff's invocation of *Dufour v. Allen*, 748 F. App'x 150, 151 (9th Cir. 2019), does not imply otherwise. *See* Jackson Br. 40. That case did not involve an effort to enforce an arbitration provision.

Regardless of the presumption of arbitrability, the principle that Plaintiff invokes does not support him. The arbitration provision in the 2016 TOS is not ambiguous. It is broad. *See* Amazon Br. 31–32 (collecting cases describing arising-from-or-related-to arbitration provisions as broad provisions). As California law recognizes, "the fact that 'related' can encompass a wide variety of relationships does not necessarily render the word ambiguous." *Hartford Cas. Ins. Co. v. Travelers Indem. Co.*, 110 Cal. App. 4th 710, 720 (2003) (citation omitted). On the contrary, "a word with a broad meaning or multiple meanings may be used for that very reason—its breadth—to achieve a broad purpose." *Id.* (citation omitted); *see also, e.g.*, *EFund Cap. Partners v. Pless*, 150 Cal. App. 4th 1311, 1322 (2007) (recognizing that a "clear and plain" arbitration provision can be both "very broad" and "unambiguous" (citation omitted)). Throughout his discussion, Plaintiff suggests that the breadth of the language he accepted favors finding it ambiguous or restricting its application. That suggestion, though, turns California's pro-arbitration policy and presumption of arbitrability on their heads. *See, e.g.*, *Wagner Constr.*, 157 P.3d at 1032 (reaffirming California's "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution" (citation omitted)).

The broad language of the arbitration provision in the 2016 TOS readily applies here. Plaintiff never grapples with his complaint's extensive discussion of the relationship between the Facebook groups, Amazon's alleged interest in them, and

the groups' focus on drivers' experiences performing services for and participating in the Amazon Flex program. *See* Amazon Br. 32. Contrary to his portrayal, the connection between Amazon Flex and this dispute is not sheer coincidence—like merely speaking the words "Amazon Flex Driver" in conversation. *See* Jackson Br. 47. The program and Facebook users' experiences in it are the very reason the groups and this dispute exist.

Plaintiff now maintains that his "Facebook posts do not arise out [of] or relate to Jackson making deliveries to Amazon customers." *Id.* at 50. But his complaint says the opposite: "During his use of the Facebook groups, Mr. Jackson's electronic communications[] includ[ed] communications about . . . deliveries." ER-208 (FAC ¶ 4); *see also* ER-213 (FAC ¶ 27). At a minimum, his deliveries and participation in the Amazon Flex program are a but-for cause of the current dispute, and that is enough to show that the dispute arises out of or relates to those deliveries and activities. *See, e.g.*, *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 n.4 (2022) (explaining that a legal controversy "arise[s] out of" a contractual relationship when the relationship is a but-for cause of the controversy).

Plaintiff also ignores that he defined his own proposed class to **require** participation in the Amazon Flex program. ER-213 (FAC ¶ 30) ("Plaintiff seeks to represent a class of all **Flex Drivers** in the United States who were members [of] the closed Facebook groups, and whose electronic communications were intercepted by

Defendant[.]" (emphasis added)). When Plaintiff seeks to serve as a representative of a class whose membership requires participation in the Amazon Flex program, he cannot claim with a straight face that the dispute is not "relat[e] in any way" to "participation in the Program." ER-178 (2016 TOS § 11(a)) (capitalization omitted).

For these reasons, the complaint's allegations "touch matters" covered by the arbitration provision, and that is all the law requires. Amazon Br. 36–37. But even under Plaintiff's more demanding standard—evaluating the elements of his claims and how litigation might proceed—this dispute fits within the arbitration provision. Plaintiff does not deny that Amazon might defend against his claims using facts about the Amazon Flex program or Plaintiff's assent to the 2016 TOS. Amazon Br. 37–38. He simply ignores Amazon's argument and incorrectly asserts that all his claims can be "resolved entirely without reference to" his contractual relationship with Amazon. Jackson Br. 46 (citation omitted). Yet his own arguments reveal otherwise. He mentions, for instance, that his claims fail if Amazon had authorization or Plaintiff's consent to view the Facebook posts. *See id.* The terms of the 2016 (or 2019) TOS could easily matter in answering that question. As just one example, the 2016 TOS says that "Amazon may . . . receive information you shared with third parties, provided that such party has obtained necessary permissions to share the information with Amazon." ER-184. Plaintiff cannot rule out the TOS's potential relevance to his claims at this stage of the case. *See, e.g.*, *Brinkley v. Monterey Fin.*

24

*Servs., Inc.*, 242 Cal. App. 4th 314, 332 (2015) (holding that a broad arbitration provision covered allegations that a debt collector violated the California Invasion of Privacy Act by secretly recording conversations with the plaintiff because the plaintiff's contract conceivably permitted those actions).[5]

Plaintiff tries to hide from these problems by dwelling on the cases discussed by the district court, despite their very different facts. *See* Jackson Br. 40–43. He fails to rebut, and mostly ignores, Amazon's explanations of why those cases are off point. *Compare* Amazon Br. 33–35 (discussing the narrower arbitration agreement and differing facts in *Howard v. Goldbloom*, 30 Cal. App. 5th 659 (2018), and *Oxy-Health LLC v. H2 Enterprises, Inc.*, 812 F. App'x 660 (9th Cir. 2020)), *with* Jackson Br. 40–43 (ignoring Amazon's arguments that the arbitration provisions in *Howard* and *Oxy-Health* were narrower than the TOS provision). Plaintiff adds citations to various other cases, but they are even less relevant.[6]

---

[5] Plaintiff also argues, for the first time, that "Amazon's secret monitoring of Jackson and other users of the private Facebook groups, and Jackson's lack of knowledge of the same, materially affected his agreement with Amazon." Jackson Br. 48. He seems to suggest that Amazon's alleged conduct invalidates his assent to the TOS. *See id.* at 48–49. That theory, however unfounded, only confirms that this dispute relates to the parties' contractual relationship.

[6] *See, e.g., Revitch v. DIRECTV, LLC¸* 977 F.3d 713, 719 (9th Cir. 2020) (addressing non-party's ability to enforce an arbitration agreement, which the Court found was **not** a question about the "scope" of the agreement); *QED Holdings, LLC v. Block*, No. 15-cv-2390, 2015 WL 12659935, at *6 (C.D. Cal. June 11, 2015) (applying the principle that "[w]here parties execute an umbrella contract that incorporates as attachments other discrete agreements, . . . even a broad arbitration

Despite the lack of any directly on-point precedent, settled legal principles should make this an easy case. "The standard for demonstrating arbitrability is not high." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). The Court may affirm only if "it can be said with assurance that [the] arbitration clause is not susceptible to an interpretation covering the asserted dispute." *Rice*, 248 Cal. App. 4th at 185 (citation omitted). The best reading of the arbitration provision—and certainly a possible one—is that it covers this dispute. Many of the complaint's allegations touch matters covered by the arbitration provision and illustrate this dispute's connection to the Amazon Flex program.

## CONCLUSION

For all these reasons, the Court should reverse the district court's order and remand with instructions to compel Plaintiff to arbitration.

---

clause appearing in an attached agreement only compels the arbitration of disputes arising out of that particular agreement"); *Mostowfi v. I2 Telecom Int'l, Inc.*, No. 03-cv-5784, 2004 WL 7338797, at *5–6 (N.D. Cal. May 27, 2004) (declining to compel arbitration where the parties had agreed to mediation as a condition precedent to arbitration but had not engaged in mediation); *Marsch v. Williams*, 23 Cal. App. 4th 250, 256 (1994) ("Where, as here, the parties have separate contractual relationships, which involve separate enterprises and most importantly separate commercial risks, an arbitration clause which governs one contractual relationship cannot be imposed in the other relationship without undermining the parties' reasonable expectations."); *Elias v. Superior Ct.*, No. G050404, 2015 WL 1455910, at *6–7 (Cal. Ct. App. Mar. 30, 2015) (unpublished) (holding that an agreement to arbitrate disputes relating to one employment relationship did not reach disputes relating to a separate employment relationship).

Dated:  August 19, 2022

Respectfully submitted,

*s/ Michael E. Kenneally*

JOSEPH DUFFY
BRIANNA R. HOWARD
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue, 22nd Floor
Los Angeles, CA  90071
(213) 612.2500
joseph.duffy@morganlewis.com
brianna.howard@morganlewis.com

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 739-3000
michael.kenneally@morganlewis.com

CATHERINE ESCHBACH
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX  77002
(713) 890-5000
catherine.eschbach@morganlewis.com

*Counsel for Amazon.com, Inc.*

27

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

# FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** __21-56107_____

I am the attorney or self-represented party.

**This brief contains 6,644 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/ Michael E. Kenneally*_____ **Date** August 19, 2022_____
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**            28            *Rev. 12/01/18*