**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| DRICKEY JACKSON, individually and on behalf of all others similarly situated, | No. 21-56107 |
| | D.C. No. 3:20-cv-02365-WQH-BGS |
| *Plaintiff-Appellee,* | |
| v. | |
| AMAZON.COM, INC., | OPINION |
| *Defendant-Appellant.* | |

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted November 17, 2022
San Jose, California

Filed April 19, 2023

Before: Mary M. Schroeder, Susan P. Graber, and
Michelle T. Friedland, Circuit Judges.

Opinion by Judge Schroeder;
Partial Concurrence and Partial Dissent by Judge Graber

## SUMMARY[*]

### Arbitration

The panel affirmed the district court's order denying Amazon.com, Inc.'s motion to compel arbitration in a putative class action brought by Drickey Jackson, seeking to represent a class of Amazon Flex drivers, and claiming damages and injunctive relief for alleged privacy violations in violation of state and federal laws.

Jackson contends that Amazon monitored and wiretapped the drivers' conversations when they communicated during off hours in closed Facebook groups. The district court denied Amazon's motion to compel arbitration, holding that the dispute did not fall within the scope of the applicable arbitration clause in a 2016 Terms of Service Agreement ("2016 TOS").

The panel held that there was appellate jurisdiction. The panel followed *Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Aloha Airlines*, 776 F.2d 812, 825 (9th Cir. 1985), to conclude that the order denying arbitration in this case was immediately appealable under 28 U.S.C. § 1292(a)(1).

The parties disagreed about which Amazon Flex Terms of Service Agreement applied to this case –the 2016 TOS or the 2019 TOS. The parties agree that under the 2016 TOS, the court should decide whether the dispute is arbitrable and whether Amazon's motion to compel arbitration should be

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

granted. Under California law and principles of contract law, the burden is on Amazon, as the party seeking arbitration, to show that it provided notice of a new TOS and that there was mutual assent to the contractual agreement to arbitrate. The panel held that there was no evidence that the email allegedly sent to drivers adequately notified drivers of the update. The district court therefore correctly held that the arbitration provision in the 2016 TOS still governed the parties' relationship.

The panel held that this dispute fell outside the scope of the arbitration clause in the 2016 TOS. To be arbitrable, the dispute must relate to the contract. Jackson's complaint did not allege that any provision of the Flex driver contract was violated. It alleged that Amazon essentially spied on Flex drivers while they were not working. The 2016 TOS contained a broad arbitration provision, but Jackson's claims did not depend on any terms of his contract as a driver for Amazon Flex. Although membership in Jackson's proposed class would require participation in the Amazon Flex program, the controversy in this case is ultimately not about the characteristics or conduct of class members, but whether Amazon is liable for wiretapping and invasion of privacy. Neither Amazon's motive nor the violation of any provision of this contract would be an element of any of Jackson's claims. The alleged misconduct would be wrongful even if there had been no contract. The panel concluded that because Amazon's alleged misconduct existed independently of the contract and therefore fell outside the scope of the arbitration provision in the 2016 TOS, the district court correctly denied Amazon's motion to compel arbitration.

Judge Graber concurred in part and dissented in part. She concurred with the majority opinion that there is

jurisdiction and that the 2016 TOS, including the arbitration provision, applies. However, she would hold that the 2016 TOS's arbitration clause covered the matters alleged in the complaint, and she would reverse and remand with an instruction to order arbitration. Applying California's test for arbitrability to the allegations in the complaint, this dispute belongs in arbitration.

## COUNSEL

Michael E. Kenneally (argued), Morgan Lewis & Bockius LLP, Washington, D.C.; Joseph Duffy, Brianna R. Howard, and Taylor C. Day, Morgan Lewis & Bockius LLP, Los Angeles, California; Catherine Eschbach, Morgan Lewis & Bockius LLP, Houston, Texas; for Defendant-Appellant.

Max S. Roberts (argued) and Joshua D. Arisohn, Bursor & Fisher PA, New York, New York; L. Timothy Fisher and Neal J. Deckant, Bursor & Fisher PA, Walnut, Creek; for Plaintiff-Appellee.

## OPINION

SCHROEDER, Circuit Judge:

Drickey Jackson seeks to represent a class of individuals, known as Amazon Flex drivers, claiming damages and injunctive relief for alleged privacy violations by Amazon.com, Inc. ("Amazon"). Jackson contends that Amazon monitored and wiretapped the drivers' conversations when they communicated during off hours in closed Facebook groups. The district court denied Amazon's motion to compel arbitration, holding that the dispute did not fall within the scope of the applicable arbitration clause in a 2016 Terms of Service Agreement ("2016 TOS"). *See Jackson v. Amazon.com, Inc.*, 559 F. Supp. 3d 1132, 1146 (S.D. Cal. 2021). Amazon appeals, arguing that the district court should have applied the broader arbitration clause in a 2019 Terms of Service Agreement ("2019 TOS"), and that even if the arbitration clause in the 2016 TOS applied, this dispute fell within its scope. We reject Jackson's threshold contention that we lack appellate jurisdiction, hold that the 2016 TOS governs, and affirm the denial of Amazon's motion to compel arbitration because this dispute falls outside the scope of the 2016 TOS's arbitration provision.

## BACKGROUND

Drickey Jackson is a driver for Amazon's delivery program known as Amazon Flex. Amazon engages individuals to make deliveries in their own cars. Amazon describes them as "delivery partners" who sign up through the "Amazon Flex app on a smartphone" and "deliver food and grocery orders from Whole Foods Market stores, Amazon Fresh locations, and other local stores, as well as

packages and orders of goods from Amazon Delivery Stations, using their personal vehicles."  Decl. of Prashanth Paramanadan ¶¶ 4-5, *Jackson,* 559 F. Supp. 3d at 1137, ECF No. 15-3.  We are not called upon to decide any issue regarding whether Flex drivers are independent contractors or employees.

When Jackson signed up for the Flex program in December 2016, he accepted the 2016 TOS.  It contained an arbitration clause that applied to disputes related to that agreement:  The clause covered "any dispute or claim . . . arising out of or relating in any way to this Agreement, including . . . participation in the program or . . . performance of services."  2016 TOS §11.  The 2016 TOS also stated that Flex participants were "responsible for reviewing this Agreement regularly to stay informed of any modifications."  2016 TOS §13.  Although the TOS allowed the drivers to opt out of the arbitration provision, Jackson did not do so.  He began driving for Amazon Flex and communicated with other Flex drivers in closed, private Facebook groups.

According to a declaration Amazon filed in the district court, Amazon emailed a new TOS to Amazon Flex drivers in 2019.  This TOS contained a broader arbitration provision that made the issue of arbitrability itself subject to arbitration.  It is not disputed that Jackson continued in the program after 2019 and continued participating in closed Facebook groups of Amazon Flex drivers as he had since 2016.

In February 2021, Jackson filed a class action lawsuit against Amazon, alleging that it wiretapped Flex drivers' communications and invaded their privacy by monitoring their closed Facebook groups.  The complaint alleged that during times when they were not working, the members of

these groups communicated about matters of mutual interest. These included "planned strikes or protests, pay, benefits, deliveries, driving and warehouse conditions, unionizing efforts, and whether workers had been approached by researchers examining Amazon's workforce." Compl. at ¶ 4, *Jackson*, 559 F. Supp. 3d at 1135, ECF No. 11. Although Jackson believed he was communicating only with other drivers, his complaint alleges that Amazon was unlawfully monitoring the communications in the Facebook groups.

The complaint alleged no contractual violations. Rather, it claimed violations of state and federal laws: the California Invasion of Privacy Act (Cal. Penal Code §§ 631, 635); invasion of privacy under California's Constitution; the Federal Wiretap Act for the interception and disclosure of wire, oral, or electronic communications (18 U.S.C. §§ 2510, et seq.) and for the manufacture, distribution, possession, and advertising of wire, oral, or electronic communication (18 U.S.C. § 2512); and the Stored Communications Act (18 U.S.C. §§ 2701, et seq.). Jackson sought to represent a class of all Flex drivers in the United States who were members of the closed Facebook groups and allegedly had communications intercepted by Amazon without their consent. He also sought to represent a subclass of members in California. The complaint sought declaratory and injunctive relief as well as damages.

Amazon moved to compel arbitration under California law. The motion invoked the arbitration clause of the 2019 TOS, which Amazon claimed Jackson accepted by continuing to make deliveries after being emailed a copy of the new terms. Amazon asserted that the 2019 arbitration provision applied and required the issue of arbitrability to be decided by the arbitrator. Amazon, however, did not produce a copy of the 2019 email notifying drivers of the

new TOS, nor did it provide any evidence that Jackson received such an email.

The district court denied Amazon's motion to compel. The court ruled that under California law, the 2016 TOS applied because Amazon had not shown that it provided individualized notice to Jackson of a 2019 TOS, and such individualized notice was necessary to establish mutual assent to the 2019 arbitration provision. *Jackson,* 559 F. Supp. 3d at 1140-41. The court further concluded that the claims of Amazon's unlawful conduct fell outside the scope of the arbitration clause in the 2016 TOS because the claims were not related to the parties' performance under the agreement. *Id.* at 1145-46. The court said that Amazon's alleged violative conduct "exist[ed] independently of Plaintiff's employment relationship with Amazon." *Id.* at 1146 (internal quotation marks and citation omitted).

Amazon now appeals the order denying its motion to compel arbitration, arguing that the 2019 TOS applies and that Jackson's claims must go to arbitration even if the 2016 provision applies. Jackson argues that we do not have jurisdiction to hear Amazon's appeal from the district court, but maintains that the district court properly denied arbitration under the 2016 provision.

## DISCUSSION

## I. **This Court Has Appellate Jurisdiction**

Jackson challenges our jurisdiction to hear this appeal because Amazon's motion to compel arbitration was not brought under the Federal Arbitration Act ("FAA"), which makes rulings on such motions immediately appealable. *See* 9 U.S.C. § 16. Jackson asserts that a denial of a motion to compel arbitration is not otherwise appealable. Our court,

however, held in 1985 that an order denying a motion to compel arbitration is immediately appealable as tantamount to a denial of injunctive relief under 28 U.S.C. § 1292(a)(1). *See Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Aloha Airlines*, 776 F.2d 812, 815 (9th Cir. 1985). We have never overruled that decision. And although the decision in *Aloha Airlines* predated the enactment of 9 U.S.C. § 16, there is no indication that Congress intended to repeal it in enacting that statute. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) ("[R]epeals by implication are disfavored, and . . . Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute." (citations and internal quotation marks omitted)).

Jackson nevertheless asks us to follow the decisions of other circuits that have held that such denials are not immediately appealable under 28 U.S.C. § 1292(a)(1). *See Indus. Wire Prods., Inc. v. Costco Wholesale Corp*., 576 F.3d 516, 520 (8th Cir. 2009); *DSMC Inc. v. Convera Corp*., 349 F.3d 679, 682 (D.C. Cir. 2003), *abrogated by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009); *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc*. 247 F.3d 44, 52 (3d Cir. 2001); *Cent. States, Se. and Sw. Areas Pension Fund v. Cent. Cartage Co.*, 84 F.3d 988, 991-92 (7th Cir. 1996); *Jolley v. Paine Webber Jackson & Curtis, Inc.*, 864 F.2d 402, 404-05 (5th Cir. 1989); *Quiepo v. Prudential Bache Sec., Inc*., 867 F.2d 721, 722 (1st Cir. 1989); *Admin. Mgmt. Servs., Ltd. v. Royal Am. Managers, Inc.*, 854 F.2d 1272, 1278-79 (11th Cir. 1988). Those circuits followed law that our circuit did not follow. They were relying on *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988), which overruled an earlier doctrine, known as the *Enelow-Ettelson* rule, under which denials of motions to

compel arbitration were routinely immediately appealable. *See id*. at 287-88. In *Gulfstream*, the Supreme Court stated that it was "overturn[ing] the cases establishing the *Enelow-Ettelson* rule and hold[ing] that orders granting or denying stays of 'legal' proceedings on 'equitable' grounds are not automatically appealable under §1292(a)(1)." *Id.* at 287.

Our court never followed the *Enelow-Ettelson* rule in the first place. Instead, our 1985 decision in *Aloha Airlines* held that denials of motions to compel arbitration are immediately appealable because they deprive appellants "of the opportunity to arbitrate the dispute, a decision with serious consequences that can only be challenged by immediate appeal." *Aloha Airlines*, 776 F.2d at 814-15. We expressly said that "[t]he *Enelow-Ettelson* rule does not apply" to our holding that a denial of a motion to compel is immediately appealable. *Id.* at 814.

We later held that orders compelling arbitration are not immediately appealable, but we distinguished such orders from orders denying arbitration. *See Abernathy v. S. Cal. Edison*, 885 F.2d 525, 529 n.15 (9th Cir. 1989). We noted that "the considerations may be different in cases in which the court refuses to stay the judicial proceedings or to order arbitration" as the parties "may be compelled to litigate the merits of their dispute in a forum they agreed to avoid." *Id.* Therefore, regardless of *Gulfstream*, orders denying motions to compel arbitration have always been immediately appealable in our circuit.

Not long after *Gulfstream*, Congress amended the FAA to provide for appeal of orders compelling or denying arbitration under that statute. The question of appealability under § 1292(a) arises only in the limited number of cases in which the FAA is inapplicable. This is one of those cases.

Here, Amazon did not seek to compel arbitration under the FAA. Its motion to compel assumed that Flex drivers are exempt from the FAA under our decision in *Rittman v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), and Amazon pressed only state law bases for arbitration. Section 16(a)(1) therefore cannot provide a basis for appellate jurisdiction. We reached a similar conclusion in *Kum Tat Ltd. v. Linden Ox Pasture, LLC.,* 845 F.3d 979, 982-83 (9th Cir. 2017) ("[O]ur jurisdiction turns on whether Kum Tat 'invoked' the FAA . . . Kum Tat cannot now morph a motion brought under [state law] into one brought under the FAA." (citations and internal quotation marks omitted)). We accordingly follow *Aloha Airlines* to conclude that the order denying arbitration in this case is immediately appealable under § 1292(a)(1). *See Aloha Airlines*, 776 F.2d at 814.

## II. **The 2016 TOS Applies**

The parties disagree about which Amazon Flex Terms of Service Agreement applies to this case–the 2016 TOS or the 2019 TOS. The parties agree that under the 2016 TOS, the court should decide whether the dispute is arbitrable and whether Amazon's motion to compel arbitration should be granted. Amazon argues that the arbitration provision in the 2016 TOS was superseded by a 2019 TOS that it circulated to Flex drivers. Amazon contends that by agreeing to the 2016 TOS, Flex drivers agreed to be bound by the new terms if they continued to perform delivery services or access the Flex app after receiving the new TOS. The arbitration provision in the 2019 TOS is broader because it requires the question of arbitrability itself to be determined by the arbitrator, not the court. The question, here is whether Jackson accepted the 2019 TOS.

According to the declaration that Amazon submitted in the district court, Amazon notified the drivers of the new TOS by email in October 2019. Amazon "distributed the 2019 TOS to existing Flex drivers . . . via email sent to the email address each such driver agreed to keep current." Decl. of Prashanth Paramanadan ¶13, *Jackson*, 559 F. Supp. 3d at 1138, ECF No. 15-3.

Jackson contends that Amazon has not met its burden of showing that he assented to the 2019 TOS. Amazon relies on the provision in the 2016 TOS stating that by signing the 2016 TOS, Flex drivers agreed to be bound by future revisions to the agreement, so long as they continued to perform deliveries or use the Amazon Flex app after receiving notice of the change. The pertinent section of the 2016 TOS provided:

> Amazon may modify this Agreement, including the Program Policies, at any time by providing notice to you through the Amazon Flex app or otherwise providing notice to you . . . . If you continue to perform the Services or access Licensed Materials (including accessing the Amazon Flex app) after the effective date of any modification to this Agreement, you agree to be bound by such modifications.

2016 TOS § 13.

The issue becomes whether Amazon provided notice of the new terms because without notice, the drivers could not assent to new contractual terms. The Supreme Court has emphasized the necessity of consent in the arbitration context, stating: "[P]arties cannot be coerced into arbitrating

a claim, issue, or dispute absent an affirmative contractual basis for concluding that the party agreed to do so." *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1923 (2022) (emphasis omitted) (internal quotation marks and citations omitted).

According to Amazon's declaration, it notified drivers via email of the 2019 TOS. Amazon did not provide the court with a copy or description of any such notice, however. Nor did Amazon make any showing that Jackson received such notice. The district court therefore concluded that Amazon failed to meet its burden to demonstrate mutual assent to the 2019 TOS. *Jackson,* 559 F. Supp. 3d at 1140-41. The district court correctly applied fundamental rules of contract formation.

Under California law and generally applicable principles of contract law, the burden is on Amazon as the party seeking arbitration to show that it provided notice of a new TOS and that there was mutual assent to the contractual agreement to arbitrate. *See Victoria v. Super. Ct.*, 710 P.2d 833, 838 (Cal. 1985). Although we have experienced a technological revolution in the way parties communicate, technological innovation has not altered these fundamental principles of contract formation. *See Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).

Mutual assent requires, at a minimum, that the party relying on the contractual provision establish that the other party had notice and gave some indication of assent to the contract. *See* RESTATEMENT (SECOND) OF CONTRACTS § 19 (AM. L. INST. 2002) ("The conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.");

*Long v. Provide Com., Inc.*, 200 Cal. Rptr. 3d 117, 122 (Ct. App. 2016). Under California law, "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Long*, 200 Cal. Rptr. 3d at 122 (citation omitted). Courts must evaluate "whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

Amazon contends that it satisfied its burden to show notice by stating in a declaration that it sent an email notifying drivers of a new TOS, such that Jackson assented by continuing to perform deliveries. Amazon relies on two district court cases in which the companies sent notice of new terms via email and the courts held that plaintiffs were notified of and assented to the new agreement: *Webber v. Uber Technologies, Inc*., No. 18-cv-2941, 2018 WL 10151934 (C.D. Cal. Sept. 5, 2018), and *In re Facebook Biometric Information Privacy Litigation*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016). We are of course not bound by those cases because they are district court decisions. Moreover, they do not support Amazon in this case because the records in those cases were quite different from the record before us.

In *Webber*, the email notified users of the Uber rideshare app that Uber's terms had been updated; provided the content of the new terms; and stated that continued use of the app or services constituted agreement to the updated terms. 2018 WL 10151934 at *3-4. The district court found this communication to be sufficient to establish that plaintiffs had reasonable notice of the new terms and assented to them by continuing to use Uber after the terms were updated. *Id.* at *4. Similarly, in *In re Facebook Biometric Information*

*Privacy Litigation*, the court analyzed the email that Facebook sent to users, which explicitly informed them of an update: The email's subject line read, "We're updating our terms and policies and introducing Privacy basics[,]" and the email itself provided hyperlinks to the new agreement. 185 F. Supp. 3d at 1164, 1166-67. In addition, Facebook provided notifications on each individual's Facebook News Feed that the terms were being updated. *Id*. The court determined that given both the email and the News Feed notification, plaintiffs had adequate individualized notice of the updated terms and that they agreed to them by continuing to use Facebook. *Id.* at 1167.

In this case, however, there is no evidence that the email allegedly sent to drivers adequately notified drivers of the update. The district court did not have the email, so it could not evaluate whether the email (assuming it was received at all) sufficed to provide individualized notice. Nor did the court have other evidence that might allow it to assess notice, such as a description of the email. Amazon provided only a declaration with a vague statement that a notice of updated terms was sent via email. Unlike in *Webber*, there is no evidence that the alleged notice Amazon sent to drivers in 2019 informed them that continuing to complete deliveries or use the app would bind drivers to the new terms.

While Amazon may not be required to produce the actual verbatim content of the email it sent to Flex drivers notifying them of the 2019 TOS, the evidence that it did provide was insufficient to allow the court to determine whether the drivers had notice of the new terms. It was Amazon's burden to show assent, not Jackson's to show lack thereof. Given Amazon's limited proffer, the court could not determine that there was assent. Amazon relies on a provision in the TOS from three years earlier to establish that drivers knew they

would be bound by any future modifications if they continued to perform services or use the app. Yet, if Flex drivers did not receive notice of the revised TOS, the fact that they continued working and using the Amazon Flex app could not demonstrate assent. Under California law, therefore, a reasonable person would not believe that the Flex drivers' conduct constituted an intent to be bound by a new arbitration provision in the 2019 TOS. *See Long*, 200 Cal. Rptr. 3d at 122.

Amazon alternatively asserts that, regardless of whether individualized notice of the 2019 change was provided via email, drivers would nevertheless be bound by that change on the basis of a provision in the 2016 TOS. The 2019 TOS was accessible on the Amazon Flex app, and Amazon points to a section in the 2016 TOS stating that by accepting the terms of the agreement Flex drivers were "responsible for reviewing this Agreement regularly to stay informed of any modifications." 2016 TOS § 13. In short, according to Amazon, the burden was on the Flex drivers to monitor the agreement for changes.

That assertion stands the law's notice requirement on its head. The burden is on the party seeking arbitration to show notice and assent. *See Knutson*, 771 F.3d at 565. We have previously observed the importance of notice in the analogous context of electronic consumer contracts. We stated that "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers" as "consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Nguyen*, 762 F.3d at 1179.

The new Restatement of the Law on Consumer Contracts now makes clear that a consumer must receive a "reasonable

notice of the proposed modified term" and a "reasonable opportunity to reject the proposed modified term." RESTATEMENT OF THE LAW CONSUMER CONTRACTS § 3 (AM. L. INST., Tentative Draft No. 2, June 2022)*.* It is not sufficient to provide "[a] general notice of the possibility of future modifications." *Id.* cmt. 3. Amazon puts the drivers in just that position. And although the drivers are not in a consumer relationship with Amazon, it is similarly unreasonable to require an employee or independent contractor to monitor his contract constantly for any changes. For the drivers' continued performance of services to constitute assent to be bound by new 2019 terms, Amazon needed to show that it actually provided notice of those terms. It did not do so. The district court therefore correctly held that the arbitration provision in the 2016 TOS still governed the parties' relationship.

The critical question then becomes whether this dispute is within the scope of that provision.

## III. This Dispute Falls Outside the Scope of the Arbitration Clause in the 2016 TOS

To decide whether this dispute must be arbitrated, we look first to the content of the arbitration clause. The applicable 2016 provision states that it applies to "any dispute or claim . . . arising out of or relating in any way to this Agreement, including . . . participation in the program or . . . performance of services." 2016 TOS § 11. To be arbitrable, the dispute must relate to the contract.

We then look at the nature of the dispute. In determining if a dispute falls within the scope of an arbitration clause, we examine the factual allegations raised in the complaint. *See, e.g.*, *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). This class action lawsuit arises from claimed

violations of federal and state laws protecting privacy. Jackson's complaint does not allege any provision of the Flex driver contract was violated. It alleges Amazon essentially spied on Flex drivers while they were not working, by monitoring and wiretapping private conversations in closed Facebook groups without the drivers' knowledge.

We have held that even under broad arbitration clauses like this one, factual allegations must at least "'touch matters' covered by the contract containing the arbitration clause." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985)); *Ramos v. Super. Ct.*, 239 Cal. Rptr. 3d 679, 721 (Ct. App. 2018). The issue is "whether the factual allegations underlying [the claims] are within the scope of the arbitration clause, whatever the legal labels attached to those allegations." *Mitsubishi Motors Corp.*, 473 U.S. at 622 n.9 (citation omitted).

A California appellate decision illustrates the principle well. In *Howard v. Goldbloom*, the California Court of Appeal interpreted a broad arbitration provision in an employment contract and determined that the plaintiff's claims were not rooted in his employment relationship. 241 Cal. Rptr. 3d 743 (Ct. App. 2018). The plaintiff alleged that his former employer's CEO, members of its board of directors, and three limited partnerships "breached their fiduciary duty to him by wrongfully diluting his interest in [the company's] stock[.]" *Id.* at 744, 749. The plaintiff had agreed to arbitrate claims "arising out of, [or] relating to . . . [his] employment with the Company or the termination of [his] employment with the Company, including any breach of [the employment] agreement." *Id.* at 747. The court reasoned that the harm the plaintiff suffered as to his stock

value was "not measured by or dependent on the terms of his employment;" rather, it involved the defendants' fiduciary duties to minority shareholders, which existed independently of any employment relationship. *Id.* at 749-52. Although the plaintiff's complaint contained allegations that took place when he was employed at the company, including the fact that he received stock as part of his compensation, the court noted that these allegations were "nothing more than historical background." *Id.* at 745, 751. Any other minority shareholder, regardless of whether he or she had been an employee, could have brought the same claim. *Id.*

The 2016 TOS contains a similarly broad arbitration provision, but here, as in *Howard*, Jackson's claims do not depend on any terms of his contract as a driver for Amazon Flex. And the harm Jackson alleges "is not measured by or dependent on the terms of" his work for Flex; rather, it involves Amazon's alleged breach of wiretapping statutes and invasion of privacy. *Id.* at 751. Of course, Jackson joined the Facebook groups because he was a Flex driver, but if other individuals who were not Flex drivers were permitted to join, as for example spouses, union organizers or others interested in the subject matter of the discussions, then those persons could likely assert the same claims against Amazon. Jackson's claims, like those in *Howard*, are not dependent on the terms of the contract.

Amazon relies on our court's decision in *Simula, Inc.*, 175 F.3d 716 (9th Cir. 1999), because it provides an illustration of claims that are dependent on the contractual terms and therefore arbitrable. This case is not similar. There, we considered whether an arbitration clause covered claimed violations of state and federal law in the course of the performance of contracts between an inventor and a licensee. The inventor of an automotive air bag system,

Simula, sued Autoliv, the licensee supplier of automotive components, alleging antitrust claims, federal and state trademark violations, misappropriation of trade secrets, and breach of nondisclosure agreements. *Simula, Inc.*, 175 F.3d at 719. The companies had entered into contracts for the development of the air bag system technology, and the contracts all contained an arbitration clause that, like the provision in this case, applied to "[a]ll disputes arising in connection with this Agreement[.]" *Id.* at 720.

We concluded that the provision "reache[d] every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Id.* at 721. We examined the factual allegations in the complaint to determine that all of Simula's claims touched on matters related to the parties' existing contractual agreement. *Id.* at 721-25. Indeed, resolution of all the claims involved interpreting the contract terms. Simula's antitrust claims required "interpreting the 1995 Agreement to determine its meaning and whether the contracts between Autoliv and Simula actually do suppress competition as alleged." *Id.* at 722. The defamation claim alleged defamatory conduct that arose out of Autoliv's performance and was controlled by the contractual agreement. *Id.* at 724. The claims of trademark violations, misappropriation of trade secrets, and breach of nondisclosure agreements were also arbitrable because evaluating them "necessitate[d] a review of the contracts." *Id.* at 725.

In this case, the allegations underlying Jackson's claims involve employer misconduct wholly unrelated to the parties' agreement. Resolving Jackson's claims would involve considerations relating to the Facebook groups such as whether the groups were in fact private and whether

Amazon had been permitted to read the groups' posts. And although membership in Jackson's proposed class would require participation in the Amazon Flex program, the controversy in this case is ultimately not about any characteristics or conduct of class members, but whether Amazon is indeed liable for wiretapping and invasion of privacy. *See id.* at 721. This dispute therefore does not touch on any matters related to the contract that would fall within the arbitration clause.

Amazon was concerned about what might happen in the future. The partial dissent maintains that because Amazon would not have conducted its spying operations if Jackson had not been a Flex driver, the dispute must be arbitrable. In other words, Amazon spied on Jackson because he was a driver, so the dispute must be related to this contract. This confuses the motivation for Amazon's alleged misconduct with the nature of Jackson's claims. Neither Amazon's motive nor the violation of any provision of this contract would be an element of any of Jackson's claims. The alleged misconduct would be wrongful even if there had been no contract.

This case may be most analogous to our court's decision in *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, where an employee alleged her employer committed False Claims Act violations by presenting fraudulent Medicaid claims. 871 F.3d 791, 794 (9th Cir. 2017). The employment agreement contained three arbitration clauses, which taken together were similar in scope to the arbitration provision at issue in the 2016 TOS. *Id.* Although the plaintiff discovered the alleged violation during the course of her employment, we held that the claims of unlawful conduct were not arbitrable. *Id.* at 799. This was because the conduct related to the employer's violation

of federal law, i.e., Medicaid fraud, and not to the employment relationship. *Id.* We stated that "[E]ven if Welch had never been employed by defendants, assuming other conditions were met, she would still be able to bring suit against them for presenting false claims to the government." *Id.* (internal quotation marks and citation omitted). Here, even if Jackson had no contract with Amazon but had been permitted to join the groups for some other reason, he would be able to bring the same claims for invasion of privacy.

In *Welch*, we looked to cases in other circuits involving claims of employer misconduct unrelated to the performance of job duties. *See Jones v. Haliburton Co.*, 583 F.3d 228, 230 (5th Cir. 2009); *Doe v. Princess Cruise Lines*, *Ltd.*, 657 F.3d 1204, 1208 (11th Cir. 2011). Plaintiffs' claims in each of those cases arose out of a sexual assault by a coworker on the employers' premises. Each plaintiff contended that the employer mishandled her assault claims. The employment contracts in each contained a broad arbitration clause that, like the one in this case, covered claims arising out of and related to the employment. *Jones*, 583 F.3d at 235; *Princess Cruise Lines*, 657 F.3d at 1214-15. In each case, the employer sought arbitration because plaintiffs were harmed while they were employed.

The appellate court in each case denied arbitration because the harm was not related to the employment. *Jones*, 583 F.3d at 241; *Princess Cruise Lines*, 657 F.3d at 1219. The Fifth Circuit in *Jones* stated that the arbitration provision should not be interpreted "so broadly as to encompass any claim related to Jones' *employer*, or any incident that happened *during her employment*[.]" 583 F.3d at 241 (emphasis in original). In *Princess Cruise Lines*, the Eleventh Circuit described as a "limitation" the requirement

that to be arbitrable, the dispute needed to "relate to, arise from, or be connected" with the agreement.  657 F.3d at 1217-18.  The limitation excluded claims where the only connection to the job was that the alleged employer misconduct occurred while the plaintiff was employed.

In a last ditch contention, Amazon argues that even if the claims themselves do not relate to either the 2016 TOS agreement, to Jackson's work, or to his participation in the Flex program, Amazon might look to privacy-related provisions in the TOS for potential defenses later in the litigation.  The partial dissent specifically suggests there may be social media clauses providing Amazon a possible defense that might make the claims arbitrable.  Arbitrability issues, however, are to be decided on the basis of the complaint.  *See, e.g.*, *Simula*, 175 F.3d at 721.  What counts is the nature of the claim.  When evaluating whether a claim is arbitrable, we do not try to predict the course of the entire litigation.  *Id.* (citing *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.3d 315, 319 (4th Cir. 1998) ("To decide whether an arbitration agreement encompasses a dispute a court must determine whether the factual allegations underlying the claims are within the scope of the arbitration clause[.]")).   And, in any event, even if a hypothetical contract might include a social media clause, *this* contract is silent on social media.

Amazon's position in this case, like the position of the partial dissent, is similar to the employer positions that were rejected in *Welch*, *Jones*, and *Princess Cruise Lines*. Amazon seeks arbitration because the alleged monitoring of drivers' conversations took place while the drivers were performing deliveries for Amazon under the agreement and participating in the Flex program.  But as in *Welch* and the *Jones* and *Princess Cruise Lines* cases upon which *Welch*

relied, the alleged misconduct was not related to the agreement.  Nor was it related to participation in the Flex program or the performance of services under that program. In *Welch*, we determined that "both of the phrases, 'arising out of' and 'related to,' mark a boundary by indicating some direct relationship."  871 F.3d at 798.  There was no direct relationship in *Welch* and there is none here.  Amazon's alleged misconduct existed independently of the contract and therefore fell outside the scope of the arbitration provision in the 2016 TOS.  The district court therefore correctly denied Amazon's motion to compel arbitration.

**AFFIRMED.**

___

GRABER, Circuit Judge, concurring in part and dissenting in part:

I concur in part and respectfully dissent in part.  I agree with the majority opinion that we have jurisdiction and that the 2016 Amazon Flex Independent Contractor Terms of Service Contract ("2016 Contract"), including that document's arbitration provision, applies.  I therefore concur in those portions of the opinion.  But, in my view, the 2016 Contract's arbitration clause covers the matters alleged in the complaint.  Accordingly, I would reverse and remand with an instruction to order arbitration.

Plaintiff had the opportunity to opt out of the arbitration provision, but he did not.  The 2016 Contract provided: "YOU AND AMAZON AGREE TO RESOLVE DISPUTES BETWEEN YOU AND AMAZON ON AN INDIVIDUAL BASIS THROUGH **FINAL AND**

**BINDING ARBITRATION**." 2016 Contract at 1. The scope of the agreement is as follows:

> SUBJECT TO YOUR RIGHT TO OPT OUT OF ARBITRATION, THE PARTIES WILL RESOLVE BY FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT, <u>ANY DISPUTE OR CLAIM</u>, WHETHER <u>BASED ON</u> CONTRACT, <u>COMMON LAW, OR STATUTE</u>, ARISING OUT OF OR <u>RELATING IN ANY WAY TO THIS AGREEMENT</u>, INCLUDING TERMINATION OF THIS AGREEMENT, <u>TO YOUR PARTICIPATION IN THE PROGRAM</u> OR TO YOUR PERFORMANCE OF SERVICES.

2016 Contract ¶ 11 (emphases added).

California law applies to this dispute. Under California law, "[t]he decision as to whether a contractual arbitration clause covers a particular dispute rests substantially on whether the clause in question is 'broad' or 'narrow.'" <u>Ramos v. Super. Ct.</u>, 239 Cal. Rptr. 3d 679, 689 (Ct. App. 2018) (internal quotation marks and citation omitted).

As the majority opinion concedes, the arbitration clause here is broad because it encompasses all possible claims related to the contract. <u>See</u> <u>id.</u> (noting that clauses that use a phrase such as "arising out of or relating to" have been construed broadly); Maj. Op. at 18. Accordingly, the complaint's factual allegations need only "touch matters" covered by the 2016 Agreement to fall within the scope of the arbitration clause. <u>Ramos</u>, 239 Cal. Rptr. 3d at 689–90 (quoting <u>Simula, Inc. v. Autoliv., Inc.</u>, 175 F.3d 716, 721

(9th Cir. 1999)). Put differently, agreements with broad arbitration clauses "encompass tort, statutory, and contractual disputes that have their roots in the relationship between the parties which was created by the contract." Id. at 690 (internal quotation marks and citations omitted). Moreover, California law applies a robust presumption in favor of arbitration, particularly when the arbitration clause is broad. Salgado v. Carrows Rests., Inc., 244 Cal. Rptr. 3d 849, 852–53 (Ct. App. 2019); accord Wagner Constr. Co. v. Pac. Mech. Corp., 157 P.3d 1029, 1031–32 (Cal. 2007) (holding that, under California law, doubts concerning the scope of arbitrable issues must be resolved in favor of arbitration).[1]

Applying California's test for arbitrability to the allegations in the complaint here, this dispute belongs in arbitration. The complaint avers that Defendant acted for only one reason: because Plaintiff was an Amazon Flex driver who was communicating with other Amazon Flex drivers solely about matters involving their participation in the Amazon Flex program. Plaintiff alleges in Paragraph 9 of the operative complaint that "Amazon discourages [its] employees from unionizing." Paragraph 2 alleges:

> Mr. Jackson is an Amazon Flex Driver. He communicated with other Flex Drivers in closed Facebook groups that were monitored by Defendant. Amazon monitored these

---

[1] In Morgan v. Sundance, Inc., 142 S. Ct. 1708, 1713 (2022), the United States Supreme Court wrote that the Federal Arbitration Act's ("FAA") longstanding policy favoring arbitration is meant simply to place arbitration agreements on equal footing with other contracts. Here, the parties eschew the FAA and rely solely on California law, which rests on distinct statutory text, so Morgan is inapplicable.

closed groups secretly and gathered information about planned strikes or protests, unionizing efforts, pay, benefits, deliveries, warehouse conditions, driving conditions, and whether workers had been approached by researchers examining Amazon's workforce.

Paragraphs 13 through 17 explain further:

13. Amazon Flex is a program by which Amazon pays regular people to deliver packages.

14. Amazon Flex drivers have complained about a myriad of issues surrounding their employment, including a lack of job security, little to no benefits, and low pay.

15. In order to discuss these issues with colleagues, many Flex Drivers, including Plaintiff, formed or joined private Facebook groups.

16. The idea of these Facebook groups is that they are only populated with Flex Drivers, not other persons, and certainly not employees or personnel of Defendant.

17. Unbeknownst to Flex Drivers, however, Defendant has been secretly monitoring and wiretapping these closed Facebook groups.

Similarly, in Paragraphs 25 through 27, Plaintiff states:

> 25. Since 2016, Plaintiff has been a member of closed Facebook groups for Amazon Flex drivers.
>
> 26. Plaintiff communicated to other Flex Drivers in [those groups].
>
> 27. Plaintiff communicated about such topics as Amazon missing payments, driving routes, checking into the warehouse five minutes before shifts started, no breaks during driving shifts, deliver[ies], and having to drive after shifts ended to finish delivering packages, which resulted in subsequent labor disputes with Amazon.

Finally, Plaintiff alleges in Paragraphs 48 and 56 that "Plaintiff continues to be at risk because he frequently uses the closed Facebook groups to communicate to Flex Drivers. Plaintiff continues to desire to use the Facebook for that purpose . . . ."

According to the complaint, Defendant used automated tools to intercept and collect Flex drivers' private Facebook posts discussing working conditions and unionization efforts. Defendant's "Advocacy Operations" department then allegedly compiled the flagged posts into a report, which was relayed to Defendant's Corporate Department. Paragraph 21 alleges that the report details "driving and warehouse conditions, strikes, pay, deliveries, benefits, unionizing, being approached by researchers examining Amazon's workforce, and/or protests[.]"

In sum, Defendant allegedly spied on Plaintiff <u>solely because of Plaintiff's independent contractor relationship with Defendant and in order to defeat, preempt, or combat work-related activities</u> by Plaintiff and other Flex drivers. Crucially, the only legitimate way to gain access to the closed Facebook group—the source of the alleged privacy violations—is to be an Amazon Flex driver.  Viewed in that light, the complaint clearly alleges "disputes that have their roots in the relationship between the parties which was created by the contract."  <u>Ramos</u>, 239 Cal. Rptr. 3d at 690 (internal quotation marks and citations omitted). Accordingly, the arbitration clause applies.  <u>Id.</u>

The majority opinion hypothesizes that, <u>if</u> the Facebook groups permitted persons other than Amazon Flex drivers to join the Facebook groups, and <u>if</u> Defendant chose to spy on communications by those persons, too, then those hypothetical Facebook users might have claims similar to Plaintiff's. Maj. Op. at 19–20.  But that speculation is beside the point.  Plaintiff alleges that Defendant's actual conduct targets Flex drivers alone and does so because of their work relationship with the company and in order to affect their ongoing legal relationship with the company.  Whether others hypothetically may have similar claims in different circumstances does not change the fact that Defendant's alleged conduct here stemmed directly and solely from the parties' contractual relationship.

The decisions in <u>Howard v. Goldbloom</u>, 241 Cal. Rptr. 3d 743 (Ct. App. 2018), and <u>United States ex rel. Welch v. My Left Foot Children's Therapy, LLC</u>, 871 F.3d 791, 799 (9th Cir. 2017), are not to the contrary.  In those cases, an unrelated plaintiff could have brought identical claims even if not employed by the defendant.  The court in <u>Howard</u> noted that "[the defendants] would have owed [the plaintiff]

the same duty if [the plaintiff] had acquired the stock in a completely different manner, for example by purchasing it from a third party[.]" 241 Cal. Rptr. 3d at 751. But here, there is only one way for a plaintiff to access the privacy claims: be an Amazon Flex driver and join the drivers' private Facebook group.

Similarly, in Welch, the court held that a plaintiff's action under the False Claims Act had no direct connection with her employment because she could have sued even if she were not employed by the defendant. 871 F.3d at 798–99. There, we relied in part on Eleventh Circuit precedent holding that, if a third party could have brought the same claims based on "virtually the same alleged facts," the dispute falls outside the scope of an arbitration provision. Id. at 799 (quoting Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204, 1220 (11th Cir. 2011). In Doe, the court held that a cruise line's employee who sued her employer for a sexual assault that occurred on a cruise ship was not required to arbitrate that claim because the alleged assault bore no relationship to her employment contract. 657 F.3d at 1219–20. The court reasoned that a party not employed by the defendant, such as a passenger, could have brought the same claim. Id. Similarly, in Welch, a party not employed by the defendant, such as a patient, could have brought the same healthcare fraud claims against the defendant. See Welch, 871 F.3d at 799.

But here, the same facts could not arise unless the harmed individual has a contractual relationship with Defendant as a Flex driver. The complaint alleges that the only legitimate way to gain access to the closed Facebook group—the source of the privacy violations—is to be an Amazon Flex driver. The only intended subjects of Defendant's surveillance (and, so far as the complaint

asserts, the only actual subjects of the surveillance) were Amazon Flex drivers.  The complaint lacks any allegation that anyone other than current Amazon Flex drivers participated in the closed Facebook discussions; that the drivers discussed any matter other than their ongoing participation in the Amazon Flex program; or that Defendant monitored, or intercepted, or had interest in any communication other than those relating to drivers' participation in the Amazon Flex program.  The claims arise precisely because of Defendant's contractual relationship with Flex drivers.   The focus of Defendant's alleged wrongdoing was Plaintiff's participation in the program and his performance of services as an Amazon Flex driver.

Moreover, the definition of the putative class members whom Plaintiff seeks to represent reinforces this action's emphasis on participation in the Amazon Flex program and on its operation.  Plaintiff chose to define the class as follows:

> Plaintiff seeks to represent a class of all Flex Drivers in the United States who were members [of] the closed Facebook groups, and whose electronic communications were intercepted by Defendant (the "Class").

First Am. Compl. ¶ 30.  In short, by definition, the class encompasses only Amazon Flex drivers.  Maj. Op. at 21.

Finally, contrary to the majority opinion's assertion, resolving Plaintiff's claims might, in fact, involve interpreting the 2016 Contract.  Maj. Op. at 21.  Plaintiff brings the following seven claims:

(1) Invasion of privacy in violation of the California Invasion of Privacy Act, Cal. Penal Code § 631;

(2) Invasion of privacy in violation of the California Invasion of Privacy Act, Cal. Penal Code § 635;

(3) Intrusion upon seclusion;

(4) Invasion of privacy in violation of California's Constitution;

(5) Violation of the Federal Wiretap Act for the interception and disclosure of electronic communications under 18 U.S.C. § 2510;

(6) Violation of the Federal Wiretap Act for the possession of electronic communication interception devices under 18 U.S.C § 2512; and

(7) Violation of the Stored Communications Act, 18 U.S.C. §§2701, et seq.

Each of those claims requires that Defendant access information without the consent of the surveilled party. See Cal. Penal Code § 631 (prohibiting "any person who . . . makes any unauthorized connection . . . or who willfully and without the consent of all parties to the communication . . . reads, or attempts to read, or to learn the contents or meaning of any message [that] is in transit or passing over any wire, line, or cable . . . "); Cal. Penal Code § 635 (prohibiting "[e]very person who . . . possesses . . . any device which is primarily or exclusively designed . . . for the unauthorized interception . . . of communications between . . . cordless telephones or between a cordless telephone and a landline"); Shulman v. Grp. W Prods., Inc., 955 P.2d 469, 490 (Cal. 1998) (establishing that intrusion upon seclusion has two elements: "(1) intrusion into a

private place, conversation or matter, (2) in a manner highly offensive to a reasonable person"); <u>Hill v. Nat'l Collegiate Athletic Ass'n</u>, 865 P.2d 633, 654–55 (Cal. 1994) (establishing that invasion of privacy under the California Constitution requires (1) a legally protected privacy interest, (2) a reasonable expectation of privacy, and (3) a serious invasion of a privacy interest); 18 U.S.C. § 2512(1) (prohibiting the assembly or possession of a device used for "surreptitious interception of wire, oral, or electronic communications"); 18 U.S.C. § 2701(a) (prohibiting intentional access "without authorization [of] a facility through which an electronic communication service is provided"). It is now common for employment or independent contractor agreements and ethical codes to contain provisions pertaining to social media. <u>See</u> Patricia Sanchez Abril, Avner Levin & Alissa Del Riego, <u>Blurred Boundaries: Social Media Privacy and The Twenty-First Century Employee</u>, 49 Am. Bus. L.J. 63, 80 (2012) (noting that "[i]ndividuals often expressly consent [to allow employers to access their social media information] by accepting a written electronic communications policy or contract clause . . ."). It is thus conceivable that, to resolve one or more of the seven claims alleged in this dispute, one would have to read and interpret the whole contract to determine whether it expressly or impliedly grants permission to Defendant to undertake the disputed activity. The claims here—unlike a claim for diminution of stock value, a claim of sexual assault, or an action under the False Claims Act—might be affected by the terms of the contract.

The majority opinion's statement that arbitrability depends on the complaint, Maj. Op. at 23, is correct but incomplete for three reasons.

First, the analysis of arbitrability requires us to examine the <u>relationship</u> between the factual allegations in the complaint and "the contract containing the arbitration clause." <u>Simula, Inc.</u>, 175 F.3d at 721. Contrary to the majority opinion's assertion, this inquiry does not require us to predict the course or outcome of the litigation; rather, it is merely a threshold analysis as to where the dispute belongs.

Second the majority opinion never comes to grips with, and indeed fails even to mention, most of the facts actually alleged, including the limitation of the private site to Amazon Flex drivers only, a site that is used to discuss Amazon Flex drivers' work-related matters only. These factual allegations are critical to the arbitration clause because they underscore that the "dispute or claim" is one "relating in any way to [the parties'] agreement" or "to [Plaintiff's] participation in the [Flex driver] program." 2016 TOS § 11.

Third, the majority opinion refers to social media clauses as being only potential defenses. Instead, such clauses are an integral part of the bargain, that is, part of "the contract containing the arbitration clause," <u>Simula, Inc.</u>, 175 F.3d at 721, which must be considered in its entirety. Indeed, even if the majority opinion's characterization is correct, the case it cites supports my point. <u>See</u> <u>J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.</u>, 863 F.2d 315, 319 (4th Cir. 1988) (holding that the district court properly referred claims for unfair trade practices, interference with contract, conversion, abuse of process, libel, defamation, and injurious falsehoods to arbitration after examining "whether the factual allegations underlying the claims <u>and defenses</u> were within the scope of arbitration regardless of the legal labels given to the cause of action" (emphasis added)).

In sum, California law requires Plaintiff to resolve his claims in arbitration. My disagreement with the majority opinion on that legal question should not be mistaken for approval of the Defendant's alleged actions. The alleged conduct, if proved, is repellant and may be illegal or tortious. But that assessment cannot alter our decision about the parties' chosen forum for resolving their dispute. I would reverse and remand with an instruction to order arbitration.